## THE PEOPLE *v.* SAMUEL CARKHUFF.

EVIDENCE OF DECLARATION OF DECEASED.—C. was indicted for murder. The evidence against him was circumstantial, and to prove that he was at the house where the murder was committed, at the time of its commission, the declarations of the deceased, made several hours previous, that C. was expected at the house, were received in evidence. *Held*, to be erroneous, as the declarations did not constitute a part of the *res gestæ* and as they were not made *in extremis*, and had no reference to the circumstances of the death.

APPEAL from the District Court, Eleventh Judicial District, Placer County.

S. D. Carkhuff resided about four miles from the City of Sacramento. He was a single man, and his house was some eighty rods from the nearest neighbor. The defendant, who was his nephew, lived with him, and there were no other inmates of the house. On the twenty-ninth of December, 1862, defendant went to Sacramento in the early part of the

day. About two o'clock P. M., deceased, while visiting at the house of Burns, his nearest neighbor, stated that defendant would be home that night. The next morning, about seven o'clock, defendant went to Burns' house and informed him that his uncle was murdered. Burns went with defendant to the house, and found the body of S. D. Carkhuff on the floor of the bedroom. His skull was broken and his throat cut. The body was cold, and it appeared from the testimony of physicians that the murder must have been committed from seven to ten hours previous. Samuel Carkhuff was indicted for the murder, and in order to prove that he was at the house about the time the murder must have been committed, Burns was allowed to testify to the declarations of deceased made while at Burns' house.

*Charles A. Tuttle*, for Appellant.

*J. G. McCullough*, Attorney-General, for Respondent.

By the Court, RHODES, J.

The defendant was indicted and convicted of murder. He assigns several errors, but it will be unnecessary to consider more than one. Burns, a witness for the prosecution, testified, among other things, as follows : " Deceased and I lunched together, about two o'clock P. M. ; my wife invited deceased to take supper with us ; he declined, saying he must go home to attend to cooking apples ; he said, Sam, meaning defendant, would be home that night ; that he had gone to the Park to see a favorite officer and witness a review."

The defendant objected to the declarations and conversation of the deceased, because they were irrelevant, were not shown to have been made *in extremis*, and not made in the presence of the defendant.

All the evidence tending to connect the defendant with the commission of a murder was circumstantial. The deceased was last seen alive at about two o'clock P. M., on Sunday, and his corpse was found at his house between seven and eight

o'clock A. M., on Monday, by witness Burns, who was informed of the death of the deceased by the defendant. Burns testified that the defendant, who lived with the deceased, left the house of the witness at eleven o'clock A. M., on Sunday, to return home to water his horses, and from that time till the following morning he was not seen at the house of deceased. The condition of the body of the deceased, when first seen by Burns, indicated that his death had occurred several hours previously, and it became necessary for the prosecution to show by facts and circumstances, or by some competent proof, that the defendant had been at his house some time during the night, and several hours previous to seven o'clock A. M., on Monday morning. The defendant was shown to have been in Sacramento, about four miles from the house of the deceased, on Sunday evening.

The only object of the prosecution in offering in evidence the declaration of the deceased that the defendant would be at home on Sunday night, was to enable the jury to presume, from the fact that the deceased expected the defendant to return that night, that he did so return, and was there at the time of the commission of the murder. It is impossible to conceive upon what theory that declaration was admissible. If the declaration had been made to the witness by any other person it would not be contended that it was admissible in evidence, for evidently it would be obnoxious to the objection that it was hearsay testimony.

The fact that the declaration was made by the deceased, does not tend to remove the objection, for the declarations of the deceased are permitted to be proven in the single case when they are made *in extremis*, and have reference to the circumstances of the death, unless the declaration constitutes a part of the *res gestæ*, or can be classed with declarations against interest, etc. (1 Greenleaf Ev., Sec. 156.)

It was not admissible as a part of the *res gestæ*, for it did not constitute one of the circumstances surrounding the murder. The expectation of the deceased that the defendant would return, and that, too, unsupported by any evidence of

the reasons for his expectations, did not even tend to prove any fact connected with the murder. The expectation may have been without any foundation; may have been merely a surmise arising from the defendant's usual habits. His expectation or declaration that the defendant would return at the time stated would possess no more legal value as evidence to prove the fact that he did return, than would the expectation of his neighbor, Burns, that the defendant would return at the given time.

Upon this question the Attorney-General cites *Kirby* v. *The State*, 7 Yerger, 259, in which it was proved by a witness that the deceased had told him that he and the defendant were going to Pine Mountain to look for a saltpetre cave; that afterwards he told him that they had searched for the cave, but had not found it, and that they (the deceased and the defendant) were soon going again in search of it. The last conversation took place shortly before the deceased was found murdered on Pine Mountain. The Court held that the Court below erred in admitting the testimony of the witness as to what the deceased said about the defendant's intention to accompany him to Pine Mountain; that it did not prove any act done by the defendant, but left the matter depending upon a mere contingency, and, at the most, expressed but an intention that was liable to be changed at any time; and that, as the defendant was not present at the conversation, the declaration did not constitute a part of the *res gestæ*, and was inadmissible.

It is unnecessary as well as improper to examine the testimony to ascertain whether there was sufficient evidence, aside from the declaration of the deceased, to warrant the jury in finding the defendant guilty; for the declaration of the deceased, upon its admission by the Court as legal and competent testimony, tended to prove the presence of the defendant at the house of the deceased on the night of the murder, and that may have been the evidence that mainly satisfied the jury that he was present at that time.

The judgment is reversed and the cause remanded for a new trial.