[No. 10,560.—Department One.]

## PEOPLE *v.* G. W. CARLTON.

RES GESTÆ—EVIDENCE—CRIMINAL LAW.—The prosecution in a trial for man-slaughter cannot, in the first instance, introduce evidence of the declarations of the deceased, made before his meeting with the defendant, to the effect that he did not intend to assault the defendant.

CASE DISTINGUISHED.—*People* v. *Arnold*, 15 Cal. 476, distinguished.

APPEAL from a judgment of conviction, and an order denying a new trial, in the Superior Court of the County of Santa Clara. BELDEN, J.

*T. H. Laine*, for Appellant.

The *Attorney-General*, for Respondent.

ROSS, J.:

The defendant was indicted for manslaughter, and was convicted of that crime. Several errors are assigned by him on this appeal, but it will not be necessary for us to consider but one. The fact that defendant killed the deceased is not disputed; but it is claimed on his behalf, that in so doing he acted in self-defense. On the trial, it had been shown in proof, that on the morning of the day of the homicide there had appeared in a newspaper published by the defendant an article extremely abusive of the deceased, and as tending to show that the deceased was not the aggressor in the affray culminating in his death, the wife of the deceased was permitted to testify, against the objections of the defendant, that her husband breakfasted at home on the morning of the day of the homicide, and that the following conversation then and there occurred, to wit: "Mr. Poole, the gentleman that was boarding there, came and told him (deceased) of the article—told him that Mr. Carlton had published an article calling him a horse-thief—and I merely remarked to my husband that it was nothing; it was about the horse that was sold awhile ago; for him to publish the right statement—for him to take no notice of Mr. Carlton's remarks. He said, no; I will give him a chance to prove it in the courts. He went and spoke to Mr. Poole, and after breakfast started out. I said to my husband, I would not have anything to do

with it.   He said, no; I want to give Mr. Carlton a chance to
prove it; and after he started out of the door—he had his pistol
in one pocket—he said, I have a good mind to leave this in the
house; but I said, I don't want to stay in the house with a
loaded pistol, and he put it in his pocket, and came back and
got his hat and cigars, and went out." The questions by which
this testimony was elicited were objected to by the defendant,
on the ground that they were immaterial, irrelevant, and inad-
missible under the issues.   The objections were overruled, and
an exception taken.

It is claimed, on the part of the people, that the declarations
testified to by the witness constituted a part of the *res gestæ*,
and were therefore admissible.   *People* v. *Arnold*, 15 Cal. 476,
is relied upon in support of the position.   In that case, it was
held, that, where a rencounter occurs between two persons,
one of whom is killed, and the circumstances are equivocal as
to which one of the two commenced the affray, the fact that
one of the parties had previously procured a weapon for the
purpose of using it against the other, although the fact is not
communicated to the latter, is a circumstance tending to show
that the purpose was fulfilled; and that the declaration made
by the party procuring the weapon as to what he meant to do
with it was a part of the *res gestæ*, and illustrative of the trans-
action: that is to say, illlstrative of the *act* of procuring the
pistol.   " It shows, in other words," said the Court, " the pur-
pose for which the weapon was procured "; and being a part of
*that* transaction, it was, with the act it tended to illustrate, ad-
missible, for the purpose of showing, as far as might be, who was
in fact the first assailant.

But in the Arnold case, if it had not been proven that the
deceased had in fact borrowed the pistol, his hostile declara-
tions would not have been admissible *as a part of the res gestæ;*
for there would have been no act shown with which it was con-
nected, calling for or admitting of explanation.   (1 Wharton
on Law of Ev. § 266; *People* v. *Carkhuff*, 24 Cal. 640; *Com-
monw.* v. *Harwood*, 4 Gray, 41.)   Nevertheless, the threat
would have been admissible as an independent circumstance, to
be considered by the jury in connection with the other facts
and circumstances of the case, in determining the question,

which of the parties did in fact commence the affray. The same doctrine in respect to threats not communicated is adopted in *People* v. *Scoggins*, 37 Cal. 676, and in *People* v. *Alvitre*, 55 id. 263.

Where such threats are introduced on the part of the defendant, the prosecution is of course entitled to rebut the evidence of them; but it does not follow that it can, in the first instance, introduce declarations of the deceased, to the effect that he did not intend to assault the defendant, or otherwise commit a breach of the peace. (1 Greenleaf on Ev. § 156; *People* v. *Carkhuff, supra.*)

In the case before us, the declarations of the deceased were to the effect that he intended to give the defendant an opportunity to prove his charges in court. The testimony of the witness admitted in evidence consisted not only of these declarations of the deceased, but of declarations of Poole and the witness as well. This testimony was not a part of the *res gestæ*, and was not admissible under the authorities to which reference has been made, nor upon any theory or principle of the law with which we are acquainted. From it injury might readily have resulted to the defendant, for it might have been and probably was argued therefrom that deceased intended to resort to the courts rather than to force for redress, and therefore did not commence the rencounter in which he lost his life.

Judgment and order reversed, and cause remanded for a new trial.

McKINSTRY, J., and THORNTON, J.