[No. 10,656.—Department Two.]

THE PEOPLE *v.* ALVIN W. TAYLOR.

MURDER—DYING DECLARATIONS—EVIDENCE.—The declarations of the deceased are admissible upon a trial for murder only as to those things as to which he would have been competent to testify if sworn as a witness in the cause; they must relate to facts only, and not to mere matters of opinion.

ID.—ID.—ID.—It is essential to the admissibility of such declarations, and it is a primary fact to be proved by the party offering them in evidence, that they were *made under a sense of impending death.*

ID.—ID.—ID.—It is not necessary that the declarations should be stated at the time to be so made. It is enough if it satisfactorily appears in any mode that they were made under that sanction; whether it be directly proved by the express language of the declarant, or be inferred from his evident danger, or the opinions of the medical or other attendants stated to him, or from his conduct or other circumstances of the case.

ID.—ID.—ID.—Such declarations must relate to the circumstances of the death, and can not be received as proof not connected as part of the *res gestæ* with the death.

ID.—ID.—ID.—RES GESTÆ.—Testimony had been admitted that the deceased shortly before his death stated, in effect, that he believed that he had been poisoned by strychnine, put in a bottle of wine by the defendant; and one Reardon testified that deceased "sent his boy for the bottle when we were there, and told him to tell Taylor to come, that he wanted to see him. The boy went and brought the bottle with him; he asked him if he had seen Mr. Taylor; he said yes."

*Held:* The evidence was admissible as part of the *res gestæ.* The defendant was not injured by it, unless the counsel for the prosecution was permitted by the Court, against the objection of defendant, to argue to the jury that he received a message and did not come to see deceased, as tending to show guilt on his part; but this does not appear to have been the case.

ID.—DECLARATIONS OF DEFENDANT—EVIDENCE—CORONER'S INQUEST.—At the coroner's inquest upon the body of the deceased the defendant made certain statements, which were voluntarily made, but not taken down in writing, and proof of these statements was admitted on the trial.

*Held:* The statements having been voluntary, the evidence was admissible.

APPEAL from a judgment of conviction and an order refusing a new trial in the Superior Court of Solano County. GREGORY, J.

A petition for hearing in bank was filed in this case after judgment and denied.

*J. C. Ball* and *J. Craig*, for Appellant.

That the deceased's statements were made after he had taken medicine, which had at least temporarily relieved him of pain, and were qualified, as testified to by all of the witnesses, by the words, "if he had another one of those spells it would carry him off;" showing that his hope of recovery was not entirely gone. The least lingering hope of recovery, no matter how faint, destroys the admissibility of such evidence. The use of the word "if" qualifies the entire declaration, and takes from it the vital and essential element, and thereby renders it clearly inadmissible. (Wharton's Law Dict. 210; 1 Greenl. Ev. 156, 162, and notes; Whart. Crim. Ev. 281, 284, 285; *People* v. *Sanchez*, 24 Cal. 24, 25; *People* v. *Carkhuff*, id. 640; *People* v. *Ah Dat*, 49 id. 652.)

The statement that he guessed Taylor must have done it shows within itself that deceased was merely surmising or guessing at it. The opinion of a witness not testifying as an expert is not evidence even in a civil case, much less where a party is on trial for his life. (1 Bouv. Law Dict. 440, art. 9, and authorities cited; Whart. Crim. Ev. 294; 1 Greenl. Ev. 162; *Norman* v. *Wells*, 17 Wend. 163; 2 Best on Ev., § 511; *Lincoln* v. *Schenectady and Saratoga R. R. Co.*, 23 Wend. 433; *Saltmarsh* v. *Bower*, 34 Ala. 613; *Succession of Penny* v. *Bloom*, 14 La. Ann. 194; *People* v. *Shaw*, 63 N. Y. 36; *Binns* v. *State*, 46 Ind. 311; *McPherson* v. *State*, 22 Ga. 478; *Whitley* v. *State*, 38 id. 50; *Collins* v. *Commonwealth*, 12 Bush, 271.)

*A. L. Hart*, Attorney General, for Respondent.

THORNTON, J.:

The defendant was indicted for the murder of Robert Benham, tried, found guilty of murder in the first degree, and sentenced to imprisonment in the State Prison for the term of his natural life. He moved for a new trial, which was, by order of the Court, denied, and he prosecutes this appeal from the judgment and order.

The principal question to be considered in this case relates to the admission of the dying declarations of the deceased. The bill of exceptions states the evidence of Craig, Reardon, and the Millsaps as to these declarations.

CAL. REPS. LIX—41

Thornton Craig, called for the prosecution, testified that he was a physician and surgeon. Knew deceased in his lifetime and saw him dead; was called to attend deceased about seven o'clock on the morning of the fourth of January, 1880; found him abed in spasms, which were frequent, occurring at short intervals; that he remained with deceased about half an hour, and then went to his office for some medicine; he was not gone more than fifteen minutes, and when he returned he found him (Benham) dead. That deceased had but one severe spasm while he was there; the others were light. No one was present when he first went into the room where deceased was; saw Charley Reardon, Mr. Milsap, and his boy come in; these persons remained with him when he went to his office for medicine. From the symptoms before death, and the appearance after death, and the result of the *post mortem,* the witness was of opinion that deceased died from strychnine poison. He had a conversation with the deceased when visiting him. Deceased said when witness was giving him the medicine, "that he would take it, but I could not save him." He made use of the expression "that I could not save him," more than once when I was going to relieve or help him; when he came out of the severe spasm, he said "he could not stand another." His manner was quiet and serious; he was very sick at the time. When I went into the room deceased told me he was poisoned by strychnine. He said so more than once. That witness' best recollection is that he said when he came out of the severe spasm, "If I have another one, it will carry me off." He said this about five minutes before witness left to go to his office for medicine. He had said: "Well, boys, I have been a faithful old blacksmith to you, but they have got me this time." Witness did not tell deceased whether he thought he would get well or not. There was nothing in his conduct that indicated that he thought he was going to die, outside of what he said, as above stated. He did not appear to be very sick until after he had the severe spasm. Between the spasms he would converse. At the time he said he was a faithful old blacksmith, he was apparently resting well. Persons were holding him nearly all the time after they came in. He made a statement to me regarding the cause of his death. It was

made shortly after I went in, and between the light spasms. It was made before the declarations above given. The witness was here asked what was the statement made to him regarding the cause of his death. He answered as follows:

"When I first went into the room, I asked him what was the matter with him. He told me that he had been poisoned by strychnine. I asked him where he got it, and he told me in the shop, out of a bottle; and then he made one of these remarks that I——. Well, I asked him, then, who put the poison there. He told me it was Taylor. I asked him if there was any difficulty between him and Taylor. He hesitated a moment and said: 'Well, I told him a short time ago that he couldn't board here any longer.' I asked him if he had left any in the bottle. He said he did, and told me where it was in the shop. I asked him if he could send for it. He said he could. I called his boy, and he told him where he could find it in a box upon the forge. He spoke as if he would like to see Taylor. I believe he told the boy that he wanted to see Taylor, or to tell Taylor to come; and afterwards he said: 'Well, boys, I have been a faithful old blacksmith to you, but they have got me this time.' And after he had that severe spasm, that 'If I have another it will carry me off,' and wanted some of us to hold his hands. The boy came back with the bottle; I took the bottle from the boy, and asked deceased if that was the bottle. He said it was one like that. He said he thought there was more in it. I asked him if he wanted to taste it, and he said, 'No; I have too much of it now.' The bottle was filled about an inch and a half with a little whisky diluted with water, that tasted like what they have in the tub in the blacksmith's shop. (There was no strychnine in the bottle, as a subsequent examination showed.) Deceased told me he drank three swallows before he detected it. He said it was intensely bitter, and he had the taste in his mouth yet. I don't know that he made use of the expression 'that Taylor poisoned him,' more than once, but he used Taylor's name more than once."

We have given the testimony very fully, designedly, with the repetitions, that all the facts may appear in this opinion.

C. A. Reardon's testimony, as it is given in the record, is as follows: That he was acquainted with deceased, and saw him

in bed on the morning of his death about seven o'clock; that he was very sick, and witness remained with him until he died; was present when the doctor gave him the medicine. He could not open his mouth very good; he told him to open his mouth and swallow, and he did so; and about the first thing he said afterwards was, "Boys, it is no use; I can't live; I have got too much." Witness said : " Bob, what's the matter ?" " Well," he said, "I guess Taylor has poisoned me ;" and then he talked how he went over to the blacksmith's shop, and took two swallows of what he thought was whisky toddy; he called it his bitters; immediately came home; felt his legs getting stiff and numb, and felt cold all over; that his wife helped him to bed, and he sent for the doctor. After he took the medicine he got better, and conversed cheerfully with those present; and it was during the time that he was feeling better, that he made the statements that I have testified about, *that he thought Taylor might have poisoned him.*

J. Millsap testified that he was with deceased about three quarters of an hour, or an hour, before he died; heard Benham say he was poisoned. He said, "it was taking the bread out of his children's mouths." He said: "Boys, I have been a faithful old blacksmith, and I have served you a long time, but I can't serve you any longer," or something to that effect. Witness said he would not be positive just what words deceased did use. He seemed to be pretty easy for some time after witness got there; soon afterwards his nerves began to twitch and jerk; he asked me to hold his hands, that it helped him. He said, "I am getting out of my head." Was near his bed; he made no preparation for death; he made no parting requests to his family, did not call any of them. If he had made any such requests, witness thought he would have heard them.

The testimony of Frank Millsap is, that he was present in the room for one hour prior to Benham's death; that he heard him say he was poisoned; that he had been a faithful old blacksmith; that he had to leave us now, if he had another of these spells. He told his wife to go out of the room. This evidence, as to dying declarations, was all objected to, the objections were overruled, the testimony admitted, and defendant excepted.

The grounds of objection are as follows: 1. That the declarations were not made *in extremis*, when the deceased had no longer any hope of living; 2. The declarations were only suspicions or opinions of the deceased; 3. That it is evident that the deceased did not know who poisoned him—he detailed no facts or circumstances going to show that deceased knew who poisoned him.

In regard to the third ground of objection above stated, it can not be maintained. Such circumstances only affect the weight to be given to the declarations of the deceased, which is wholly for the jury. (1 Greenl. Ev., §§ 159, 160.) If the dying declaration is complete and shows matters of fact and not the opinion of the declarant, it is admissible. The Court passes on its admissibility. As to the weight and credit to which it is entitled, the jury alone are to determine. (1 Greenl. Ev., sections above cited.)

C. A. Reardon, as appears from his testimony above quoted, states that the deceased said after the doctor gave him some medicine, "Boys, it is no use, I can't live. I have got too much." I said, "Bob, what is the matter?" "Well," he said, "I guess Taylor has poisoned me." On cross-examination the witness said: "After he took the medicine he got better and conversed cheerfully with those present; and it was during the time that he was feeling better, that he made the statements that I have testified about, that he thought Taylor might have poisoned him."

The law is well settled that the declarations of the deceased are admissible *only to those things, to which he would have been competent to testify, if sworn as a witness* in the cause. They must relate to facts only, and not to mere matters *of opinion* (1 Greenl. Ev., § 159; 1 Whart. Am. Cr. L., § 678; *People* v. *Sanchez,* 24 Cal. 26; *Warren* v. *State,* 9 Tex. Ct. of App. 629); *or belief* (*R.* v. *Sellers O. B. 1796,* Car. C. L. 233; *McPherson* v. *The State,* 22 Ga. 478; *Johnson* v. *The State,* 17 Ala. 618; *McLean* v. *The State,* 16 id. 674; 2 Barn. & Cress. 608; *Nelson* v. *State,* 7 Humph. 542). Under this rule the Court erred in admitting the above testimony of Reardon.

The deceased could not have been allowed to testify as to his guesses, or as to whom he thought might have poisoned

him, which was nothing more than an opinion or conjecture. This evidence was not withdrawn from the jury.

The motion to strike out after the evidence was in was denied. The Attorney General, who appeared for the prosecution, consented to its being stricken out, but it nowhere appears that it was done.

It appears from Craig's evidence that the declarations as to Taylor's poisoning him, to which he deposed, were made before the deceased said that he would take the medicine, "but you can not save me," and before he said, after having a severe spasm, that "he couldn't stand another." In fact all statements showing the state of mind of the deceased, were made after he stated to Doctor Craig that Taylor had poisoned him.

In the opinion of the Court in *People* v. *Sanchez*, 24 Cal. 24, the remarks of the Court as to this species of testimony are to the point under consideration.

" This species of testimony," said the Court, "should always be received with the greatest caution, and too much care can not be observed by the Court in scrutinizing the primary facts upon which its admissibility is grounded. No person is entirely exempt from a disposition to excuse and justify his own conduct, or to inflict vengeance upon one at whose hands he has suffered a grievous wrong, and in the eye of the law this proclivity is presumed, in cases like the present, to be overcome and silenced only by the presence of almost immediate death. An undoubting belief existing in the mind of the declarant, at the time the declarations are made, that the finger of death is upon him, is indispensable to that sanction which the law exacts; and if it shall appear in any mode that there was a hope of recovery, however faint it may have been, still lingering in his breast, that sanction is not afforded and his statement can not be received. The existence of such belief, however, need not be proved by an express statement by the declarant to that effect; it is sufficient, if it appears from any circumstance, or from all the circumstances of the case taken together, that such belief actually existed." (*People* v. *Sanchez*, 24 Cal. 24; *People* v. *Hodgdon*, 55 id. 76.)

"It is essential to the admissibility of these declarations," says Mr. Greenleaf, " and it is a primary fact, to be proved

by the party offering them in evidence, that they were *made under a sense of impending death;* but it is not necessary that they should be stated, at the time, to be so made. It is enough, if it satisfactorily appears, in any mode, that they were made under that sanction; whether it be directly proved by the express language of the declarant, or be inferred from his evident danger, or the opinions of the medical or other attendants, stated to him, or from his conduct, or other circumstances of the case, all of which are resorted to, in order to ascertain the state of the declarant's mind."

Do the circumstances show that the declarations of deceased to Dr. Craig were made under a sense of impending death? The witness found him in spasms; he said he was poisoned by strychnine, and then proceeds to say that Taylor poisoned him, as above stated. Mr. Greenleaf says that it must satisfactorily appear, from the circumstances, that they were so made. In the *People* v. *Sanchez,* above cited, it is said by the Court (*per* Sanderson, C. J.): "An undoubting belief existing in the mind of the declarant at the time that the declarations are made, that the finger of death is upon him, is indispensable to the sanction which the law exacts."

At the time that the declarations deposed to by Craig were uttered the deceased had said nothing from which his state of mind could be inferred. He believed he had been poisoned and so said; he knew he was sick from it and had had spasms. It is evident that he knew he was ill and needed the services and skill of a physician, whose attendance he had procured, but there was nothing to indicate that he thought death inevitable. While it may well be argued from the circumstances, that he knew he was in great danger, still there is no satisfactory proof that he was impressed with the belief that the danger was so great that he would not recover. The physician had not told him then or at any time that he could not recover. There was some time between the declarations as to Taylor having poisoned him and the statements deposed to by the doctor, which showed that he thought he could not recover. What the interval of time was between the latter statements and the former, does not appear, but it was long enough for the impression to have taken hold of his mind

(which there is nothing to show existed, when the former statements were made), that his recovery was hopeless.

If it appeared that the former statements were connected with the latter, by preceding them in point of time by an interval so brief as to show that they were in fact but one statement, it might be held that they *were made under a sense of impending death,* but that does not so clearly appear here as to authorize the conclusion that they were thus made. Under the circumstances, as the facts are disclosed to us by the record, we are of opinion that the Court erred in admitting the declarations sworn to by the witness Craig. It does not satisfactorily appear that these declarations were made when the declarant was *"under a sense of impending death,"* or that there was an *undoubting belief* existing in the mind of the deceased, at the time the declarations were made, "that the finger of death was upon him."

In connection with the evidence of Doctor Craig, in regard to the statements of the deceased, a few further observations are called for. He testified, as appears above, that he asked Benham, when he told him that Taylor had put the poison in his drink, if there was any difficulty between him and Taylor, that he made reply: "Well, I told him a short time ago that he couldn't board here any longer."

We consider this embraced within the objections of defendant. This was not such a declaration as is admissible as a dying declaration. Such declarations must relate to the circumstances of the death. They are so restricted by the law. (1 Greenl. Ev., § 156; Wharton's Am. Cr. Law, §§ 669, 670.) This statement as to what deceased told Taylor, related to a former and distinct matter, not one of the circumstances of the death. It does not come within the principle of necessity, on which dying declarations are admitted by the law in evidence. (See citations just above; *People* v. *Glenn,* 10 Cal. 32.) They constitute no part of the *res gestæ* of the death, for they are the narrative of an occurrence which had transpired some time before. (See the cases cited in notes to § 670 of Whart. Am. Cr. Law; *People* v. *Carkhuff,* 24 Cal. 642.)

To show the caution with which such declarations are per-

mitted to be given in evidence, we will refer briefly to some
of the cases on the subject. In *R.* v. *Christie*, Car. C. L. 232,
O. B. 1821, the deceased inquired of the surgeon if his wound
was necessarily mortal. He was told that recovery was just
possible, and that there had been an instance where a person
had recovered after such a wound. He said: " I am satisfied."
After this he made a statement. This statement was rejected
by Abbott, C. J., and Park, J., as a dying declaration, because
it did not appear that the deceased thought himself at the
point of death, for having been told that the wound was not
necessarily mortal, he might still have had a hope of recovery.
In *R.* v. *Van Butchell*, 3 Car. & P. 629, where the only evidence
that the person was aware of his situation was that he said
"he should never recover," it was held inadmissible. In *R.* v.
*Megson*, 9 Id. 418, on a trial for murder, these facts appeared:
Two days before the death of the deceased, the surgeon told
her she was in a very precarious state, and on the day before
her death, when she had become much worse, she stated to
the surgeon that she found herself growing worse, and that
she had been in hopes she would have got better, but as she
was getting worse, she thought it her duty to mention what
had taken place. Immediately after this she made a state-
ment, which was rejected when offered, as it did not suffi-
ciently appear that at the making of it, the deceased was
without hope that she would recover. In *People* v. *Hodg-
don*, 55 Cal. 76, a paper was offered and admitted in evidence
in the Court below as a dying statement of Emma Downs.
It began in these words: " Believing that I am very near death,
and that I may not recover;" then followed the dying declar-
ation. This Court held the ruling of the Court below error,
on the ground that the words above quoted were " a clear in-
dication that the deceased, at the time of making the declar-
ation, had not abandoned all hope of recovery." (See, further,
*People* v. *Ah Dat*, 49 Cal. 652; *Jackson* v. *Commonwealth*, 19
Gratt. 656; *Rex* v. *Fagent*, 7 Car. & P. 238; *Welbourn's Case*,
1 East's P. C. 358; *Rex* v. *Hayward*, 6 Car. & P. 157; *Rex* v.
*Crockett*, 4 Id. 544.)

Reardon testified that deceased " sent his boy for the bottle
when we were there, and told him to tell Taylor to come;
that he wanted to see him. The boy went, and brought the

bottle with him. He asked him if he had seen Mr. Taylor; he said yes."

This evidence was objected to as incompetent, and not the dying declarations of the deceased. The objection was overruled, and defendant excepted. The evidence was admissible as part of the *res gestœ*. It occurred during the brief illness of the deceased, and just before his death. We can not see that Taylor was injured by it, unless the counsel for the prosecution was permitted by the Court, against the objections of defendant, to argue to the jury, that Taylor received the message and did not come to see deceased, as tending to show guilt on the part of Taylor.

Had such argument been made by the prosecution, the counsel for the defendant might have objected to it; and if the Court had overruled the objection, and allowed counsel so to argue to the jury, upon exception by defendant, it would have been error, for the reason that there was no evidence that Taylor had received the message. The boy testified only that he had seen Taylor, but did not say he had delivered the message. Nor was there any evidence that Taylor had ever received any such message. As it appears, however, in the bill of exceptions, there was no error as to this, for which the cause should be reversed.

At the Coroner's inquest upon the body of the deceased Benham, Taylor made certain statements, which were deposed to by witnesses who heard them. It appears they were voluntarily made. It does not appear that they were taken down in writing.

The defendant objected to this testimony, on the ground that the law provides that such statement be made in writing; that the statement was made in a judicial proceeding, and whatever was therein said could not be used in a subsequent proceeding against the accused; that no sufficient foundation had been laid to receive a statement as a confession. The objection was overruled, and defendant excepted.

The counsel for defendant cites, to maintain this exception, Section 1515 of the Penal Code, which is as follows: "The testimony of the witnesses examined before the Coroner's jury must be reduced to writing by the Coroner, or under his direction, and forthwith filed by him, with the inquisi-

tion, in the office of the Clerk of the Superior Court of the county."

The defendant Taylor was not a witness. The witnesses are those who can be compelled to attend and testify, and may be punished by the Coroner for disobedience, for refusing to testify. (Penal Code, § 1513.) Taylor could not have been compelled to testify. His statements must be made of his own volition. The testimony of the *witnesses* only is required to be reduced to writing. (§ 1515, *ut supra.*) Nothing is said in regard to the statements of the accused; certainly there is no requirement of the law that they should be put in a written form. The statement having been voluntary, the evidence was admissible, whether made in a judicial proceeding or any other. There was, therefore, no error in the ruling of the Court.

It is said that a new trial should be granted, because the evidence is insufficient to justify the verdict. The bill of exceptions does not purport to set forth all the evidence, and it appears from the minutes of the trial, which are a part of the record (Pen. Code, § 1207), that several witnesses were called and examined on the trial, no part of whose evidence appears in the bill of exceptions. The bill of exceptions fails to show that the defendant moved on any such ground. This ground can not then be considered.

We have examined all the points made by the appellant, and find no error in the rulings of the Court, except in the instances above pointed out. For these errors, the judgment and order denying the new trial must be reversed, and the cause remanded, that the defendant may be tried anew, *and it is so ordered.*

SHARPSTEIN, J., concurred.

MORRISON, C. J.:

I concur in the judgment of reversal.