[No. 20386. In Bank. — December 12, 1888.]

THE PEOPLE, RESPONDENT, *v.* ANDREW IRWIN, APPELLANT.

APPOINTMENT OF ELISOR. — Before appointing an elisor to serve a *venire* the court should require a showing that the sheriff is disqualified to serve it. In such matters the courts should follow the statutes as closely as possible.

CRIMINAL LAW — HOMICIDE — EVIDENCE — DECLARATIONS OF DECEASED. — The declarations of the deceased to third parties at various times before the homicide as to his fears of murder, and that he intended to leave the country because the defendant and others were conspiring to take his life, and that he had given them no cause, etc., are not admissible in evidence, and to admit them is highly prejudicial error.

ID. — CONSPIRACY — HANGING OF BODY OF DECEASED — EVIDENCE. — A conspiracy formed to secure the death of the deceased by hanging does not continue after the death, so as to include a subsequent agreement of certain conspirators to hang the dead body upon a tree, to which subsequent agreement the defendant was not a party.

ID. — EVIDENCE OF CONSPIRACY — DECLARATIONS OF CO-CONSPIRATOR. — The declarations or threats of an alleged conspirator in a homicide, made before the conspiracy was formed, are not admissible to prove the fact of conspiracy; nor can the declarations of the deceased be admitted to prove a conspiracy to kill him. No declarations of a co-conspirator, except those made during the pendency of the conspiracy, and in furtherance of its objects, can be used against a co-conspirator. Declarations of a co-conspirator, made after the homicide, are not admissible, and declarations showing past acts, or expressing merely the opinion or desire of the party making them, are only binding on himself, or on those in whose presence they are made.

ID. — DECLARATIONS OF DEFENDANT. — Evidence of a scrap of a conversation overheard between the defendant and an alleged conspirator, which might possibly refer to the deceased, but with nothing to show to whom it referred, or what was said before or after the remark quoted, is not admissible.

ID. — INSTRUCTION AS TO ACTS OF CONSPIRATORS — EVIDENCE. — It is error to instruct the jury that the acts of conspirators in concealing the death of the deceased and giving a false impression as to the cause of death, and their being guilty of falsehood, evasion, and silence when questioned concerning the death, if believed by the jury, may be considered in establishing the fact of criminal conspiracy. No falsehood, evasion, or silence of a conspirator occurring after the death is admissible in evidence under any circumstances.

ID. — INSTRUCTION AS TO REFUSAL OF CONSPIRATORS TO TESTIFY. — It is error for the court to refuse to instruct the jury that the refusal of alleged conspirators to testify when placed on the witness-stand should not be considered by the jury in determining the question of guilt or innocence, and that the jury should not presume therefrom that the testimony, if given, would be against the defendants.

ID. — CHALLENGES TO JURORS — NEWSPAPER REPORTS. — The reading of newspaper reports as to the evidence respecting a homicide, and the forming of an opinion thereon, does not disqualify a juror from trying a defendant accused of having a part in the homicide if he says he can try the case impartially according to the evidence adduced before him.

ID. — EVIDENCE — PLACARD UPON BODY OF DECEASED. — A placard found upon the body of the deceased by the coroner after the homicide, and which was filed in evidence upon the separate trial of a co-defendant, is admissible upon the testimony of the coroner that he thinks it is the same which he found upon the body.

ID. — DEPOSITION OF DEFENDANT BEFORE CORONER'S JURY. — The whole of the deposition of the defendant taken before the coroner's jury is admissible in evidence for the prosecution.

ID. — DECLARATIONS OF DEFENDANT. — Declarations of a defendant accused
of homicide, made a year or two before the homicide, that he would help
to string up a man who would jump the land of another, though not re-
lating to the deceased, are admissible against the defendant.

APPEAL from a judgment of the Superior Court of San
Benito County, and from an order denying a new trial.

The defendant and J. T. Prewett were jointly accused
by information of the murder of A. W. Powers, com-
mitted in the county of San Benito on the seventeenth
day of September, 1885. The facts proven in the case
show that prior to August, 1885, J. T. Prewett and Pow-
ers had trouble about land matters; that about August
28, 1885, a fire was set in the pasture fields of Prewett.
Prewett and the defendant found tracks near the fire,
and compared them with Powers's tracks made near his
residence, and concluded that Powers set the fire. They
informed their friends and neighbors, and a meeting
was held to consider the subject, at the residence of
Prewett, the Thursday after the fire; some five persons
met at this time. On September 12th another meeting
was held at Irwin's house, at which nine persons were
present. Another meeting was held at Willow Creek on
September 15th, at which some sixteen persons were
present, and they agreed to meet again on September
17th, and a committee was appointed to prepare resolu-
tions to be reported at the next meeting, also a card to
pin on Powers, if they should hang him. On the after-
noon of September 17th, between five and six o'clock,
Prewett met Powers in the Bear Valley Cañon, and killed
him. Prewett claimed that the killing was in self-defense.
On the evening of September 17th, after the killing of
Powers was reported, the adjourned meeting was held,
and resolutions were adopted pledging all present to
secrecy. They afterwards hung the body of Powers to a
tree, and placarded it with a card printed in pencil on
one side "Vigilantes 150." Irwin was present at all the

meetings except the last.   He went to the place of the last meeting, but before they had all assembled he went away, and did not return, and took no active part in any meeting, and did not advise or direct at any meeting which he attended.   An elisor was appointed to serve the *venire* upon the trial of the defendant without any show-ing of disqualification of the sheriff, except that one had been appointed upon the separate trial of Prewett for such disqualification.   Challenges were interposed to three of the jurors, upon the ground that they had read the published evidence given upon the trial of Prewett, and had formed an opinion upon it; but each stated that he could try the case impartially according to the evi-dence.   The card found upon the body of the deceased, which had been filed in evidence by the clerk, upon the trial of Prewett was admitted in evidence, upon the testi-mony of the coroner that he thought it was the same which he found upon the body of the deceased, against the objection of defendant that it was not properly iden-tified.   The court permitted to be read in evidence for the prosecution the whole of the deposition of the de-fendant taken by the coroner at the inquest of the de-ceased, against defendant's objection.   Edward McGrury was allowed to testify to a conversation with defendant a year or two before the killing, in which he said, with reference to a man named Bradley, who had settled on Prewett's land, that he would help to string up a man who would jump Prewett's land.   The further facts are stated in the opinion of the court.

*N. C. Briggs, P. B. Tully, M. T. Dooling,* and *John L. Hudner,* for Appellant.

The elisor should not have been appointed without an affidavit filed in this case to justify it under the law. (Stats. 1883, p. 322; *Hugg* v. *Kille,* 7 N. J. L. 435.)   The court should have allowed the challenges to the jurors who had formed opinions from reports of the sworn testi-

mony in *People* v. *Prewett*. Such reports are not referred to in section 1077 of the Penal Code. (*State* v. *Saunders*, 14 Or. 300.) The card found on the body of the deceased was not properly identified. The deposition of defendant taken at the coroner's inquest was not admissible. (Pen. Code, sec. 686; Const., art. 1, sec. 13.) Declarations of deceased which were neither dying declarastion nor part of the *res gestæ* were inadmissible. (*People* v. *Carlton*, 57 Cal. 84; 40 Am. Rep. 112; *People* v. *Carkhuff*, 24 Cal. 642.) Declarations of so-called conspirators were inadmissible, no conspiracy being proven. (1 Greenl. Ev., sec. 3; *People* v. *Moore*, 45 Cal. 19.) Only declarations of conspirators in furtherance of the object of the conspiracy during its existence are competent. (*Spies* v. *People*, 122 Ill. 1; 3 Am. St. Rep. 321; *Samples* v. *People*, 121 Ill. 547; *Patton* v. *State*, 6 Ohio St. 470.) Acts or declarations of conspirators after the death are inadmissible. (1 Greenl. Ev., secs. 111, 233; *People* v. *Moore*, 45 Cal. 21; *People* v. *English*, 52 Cal. 212; *People* v. *Stanley*, 47 Cal. 114; 17 Am. Rep. 401; *People* v. *Aleck*, 61 Cal. 138.) Under section 1127 of the Penal Code, the defendant is entitled to have all correct and pertinent instructions given.

*Attorney-General Johnson*, and *Montgomery & Scott*, for Respondent.

The appointment of the elisor was without prejudice. The challenges to the jurors were properly disallowed. (Pen. Code, sec. 1076; *Spies* v. *People*, 122 Ill. 1; 3 Am. St. Rep. 321; *Wilson* v. *People*, 94 Ill. 324.) The deposition of defendant taken at the coroner's inquest, as required by law, was admissible as a sworn declaration to show contradictory statements. (*People* v. *Devine*, 44 Cal. 459; *Stephens* v. *People*, 19 N. Y. 549.) The declarations of deceased were concomitants of the principal fact, and admissible to show the conspiracy. (*People* v. *Ah Lee*, 60 Cal. 85; 1 Greenl. Ev., sec. 100; *Insurance Co.* v. *Mosley*, 8

Wall. 397; *People* v. *Vernon*, 35 Cal. 49; 95 Am. Dec. 49; *People* v. *Arnold*, 15 Cal. 476.)

PATERSON, J.— The record herein bristles all over with errors. It is another case in which an over-zealous prosecution has led the trial court into prejudicial errors, necessitating a reversal of the judgment.

It is contended that the court erred in appointing an elisor, in the absence of anything tending to show that the sheriff was disqualified to serve the *venire*. It is admitted that it was an irregularity, but counsel for respondent claim that no injury resulted.

In view of other and more serious questions which we shall consider, it is unnecessary to determine whether the defendant was prejudiced by the appointment and services of the elisor. We repeat, however, the statement made by us in *People* v. *Yeaton*, 75 Cal. 415, that "in such matters courts should follow the statutes as closely as possible."

The declarations of the deceased, made to various persons and at different times prior to his death, to the effect that he was going to leave the country because he was afraid Prewett would murder him; that Prewett was engaged with others in holding meetings and conspiring to take his life; that he would have no chance to escape, as they would shoot him from the bush; that, although he had done nothing against Irwin, the latter would be induced by Prewett to kill him; that Irwin, Maynard, Hasbrouck, Chapman, Fowles, and Mylar were engaged in the conspiracy with Prewett; that Prewett persisted in making him trouble about his land, as he had for others before; that there was no truth in the statement that he, deceased, had set the fire on Prewett's place, etc., —were not admissible under any known principle or rule of evidence. As was said by this court with respect to similar declarations: "It is impossible to conceive upon what theory the declarations were admissible. If the declaration had been made to the witness by any other

person, it would not be contended that it was admissible in evidence, for evidently it would be obnoxious to the objection that it was hearsay testimony. The fact that the declaration was made by the deceased does not tend to remove the objection, for the declarations of the deceased are permitted to be proven in the single case when they are made *in extremis,* and have reference to the circumstances of the death, unless the declaration constitutes a part of the *res gestæ,* or can be classed with declarations against interest, etc. (1 Greenl. Ev., sec. 156.) It was not admissible as a part of the *res gestæ,* for it did not constitute one of the circumstances surrounding the murder. The expectation of the deceased that the defendant would return, and that, too, unsupported by any evidence of the reasons for his expectation, did not even tend to prove any fact connected with the murder. The expectation may have been without any foundation,— may have been merely a surmise arising from the defendant's usual habits. His expectation, or declaration, that the defendant would return at the time stated, would possess no more legal value as evidence to prove the fact that he did return than would the expectation of his neighbor Burns that the defendant would return at the given time." (*People* v. *Carkhuff,* 24 Cal. 642.)

In *People* v. *Carlton,* 57 Cal. 84, 40 Am. Rep. 112, the fact that the deceased was killed by defendant was not disputed, but it was claimed by the defendant that in doing so he acted in self-defense. The widow of the deceased was called as a witness in that case, and, for the purpose of showing that the deceased was not the aggressor, was permitted to testify that on the morning of the homicide her husband, before leaving home, had said the trouble between defendant and himself would be settled in court, and that he wanted to leave his pistol at home, but was prevented by the witness, who said she did not want to stay in the house with a loaded pistol.

The court there said: "This testimony was not a part of the *res gestæ,* and was not admissible under the authorities to which reference has been made, nor upon any theory or principle of the law with which we are acquainted. From it injury might readily have resulted to the defendant, for it might have been, and probably was, argued therefrom that deceased intended to resort to the courts rather than to force for redress, and therefore did not commence the rencounter in which he lost his life." So in the case at bar, injury must have resulted to the defendant from these declarations, for it undoubtedly was argued that the deceased intended to leave the country to escape trouble with Prewett, the defendant, and others, "and therefore did not commence the rencounter in which he lost his life." The immediate circumstances of the killing are not in evidence, but the witness Alexander testified—and it is the only testimony as to what occurred between Prewett and deceased—that Prewett had told him he met the deceased in the cañon, and killed him in self-defense. The declarations we have referred to must therefore have been given much weight by the jury.

Such declarations depend for their force upon the veracity of the deceased, or the party who has been assaulted, are highly prejudicial (*State* v. *Pomeroy,* 25 Kan. 350), and are regarded as being so greviously injurious that in one case it was held the judgment should be reversed, although no objection was made to the evidence when offered. (*People* v. *Williams,* 3 Abb. App. 600.) There is no analogy between such statements and dying declarations; for the latter, being made in view of immediate death, have all the sanction and solemnity of testimony given under oath before the court and jury. (*Kennedy* v. *People,* 39 N. Y. 253; *State* v. *Clements,* 15 Or. 237; *State* v. *Draper,* 65 Mo. 335; 27 Am. Rep. 287; *Binns* v. *State,* 57 Ind. 46; 26 Am. Rep. 48.)

But it is claimed by counsel for respondent that these declarations were admissible in evidence to prove conspiracy, and the court seems to have allowed them for that and no other purpose; that is to say, the main fact which they are supposed to explain is the alleged conspiracy, and not the killing. In other words, it is admitted by counsel for respondent, as we understand the matter, that if there was no question of conspiracy in the case, a declaration by deceased that Irwin was making preparations to kill him, and would kill him unless he left the country, would be inadmissible. This must be admitted. Such a declaration is on a par with the one referred to in *People* v. *Carlton, supra,* and, as said there, "not admissible upon any theory or principle of the law with which we are acquainted." The existence of a conspiracy was a fact to be proven in the case. Without such proof the defendant could not be convicted, as it is not claimed that he was present at the killing, or knew of it until some hours after it occurred. Now, the declaration of Prewett, Fowles, or of any other alleged conspirator, could not be admitted to prove the fact of conspiracy. Such declaration would be rejected, "lest," as Greenleaf says, "the jury should be misled to infer the fact itself of a conspiracy from the declaration of strangers." (1 Greenl. Ev., sec. 111.) "*After proof of conspiracy*, the act or declaration of a conspirator against his co-conspirator, and *relating to the conspiracy*," is the restriction which is placed upon the evidence of co-conspirators by our Code of Civil Procedure, section 1870, lest the jury take the declaration of one not proven by other evidence to be a conspirator, as proof of the conspiracy itself, and then, "after proof of conspiracy," by such declarations, use the same evidence to establish the guilt of the defendant. We are unable to discern any greater sanctity in the declarations of a deceased in this regard than that pertaining to the declarations of alleged conspirators. Declarations *favorable* to defendant, made by the de-

ceased so long prior to the killing, have been held to be not admissible as a part of the *res gestæ.* (*State* v. *Vincent,* 24 Iowa, 576; 95 Am. Dec. 753.) Nor is the defendant permitted to prove that a third party made threats to kill the deceased, and then left just before the killing. (*Crook* v. *State,* 5 W. Va. 510.) To admit such declarations,—such hearsay testimony,—in proof of the conspiracy itself, would in civil matters "put every man at the mercy of rogues" (55 Mich. 261); and in charges of criminal conspiracy, render the innocent the helpless victims of villianous schemes, supported and proved by the prearranged and manufactured evidence of the promoters thereof. If any further authority be needed in support of the proposition that where two are jointly indicted, the declarations of the deceased cannot under such circumstances be used against either of the defendants for any purpose, it may be found in *Cheek* v. *State,* 35 Ind. 492. There Cheek and one Bailey were jointly indicted for the murder of one Harrison. A witness was asked what the deceased said to him on the road before he met the defendants, or came in sight or hearing of either of them, as to the purpose of Harrison in turning back with the witness. He replied: "Mr. Harrison spoke thus: 'Doc, I am glad you have come; there are two ruffians going up the road, and they have threatened to take my life; they have gone to my house, and I want you to go back with me.'" The court there held that the evidence was not *res gestæ,* and said: "We think the books may be searched without success to find a case where the statements of a murdered man, made before he came in sight or hearing of his slayer, can be given in evidence against the accused on his trial. Was this evidence detrimental to the accused? We think so. It was well calculated to make or induce the jury to believe that the killing was from premeditated malice, and not from sudden, hasty transport, or momentary passion; and might, and probably did, induce the jury to find a verdict of murder in

the first degree (the penalty of which is death), instead of a lower degree of the offense. The case must be reversed for this error." *Weyrich* v. *People*, 89 Ill. 98, is a case illustrative and in support of the same proposition.

The cases cited by counsel for respondent are not in point. The main act to be proved in cases of this kind is the unlawful killing of the deceased. Anything so connected with that act in point of time and character as to explain how and why it was committed is a part of the *res gestæ*. If Prewett had not succeeded in killing Powers, it could hardly be contended that the latter, on a trial of the defendant for an assault to murder, could testify to declarations of his own, made several hours before the affray, concerning the relations existing between Prewett and the defendant.

There were other declarations of the deceased admitted in evidence, still more prejudicial than those to which we have referred. Against the objections of defendant, the witness Holt was permitted to say that Prewett had told him—long before the fire on Prewett's place, which occurred before any meetings were held and before any conspiracy existed—"deceased had blown up houses, and if any of his property was burned or blown up, he would know the man to go after; that it was a serious thing to take human life, but he would know the man to go for if his property were destroyed." The witness Alexander was permitted to testify to declarations made by Prewett after the death of Powers. No declarations, except those made "during the pendency of the conspiracy, and in furtherance of its objects," can be used against a co-conspirator. Declarations showing past acts, or expressing merely the opinion or desire of the conspirator making them, are not binding upon any one except himself, or those in whose presence they are made. (*Spies* v. *People*, 122 Ill. 1; 3 Am. St. Rep. 321; *Samples* v. *People*, 122 Ill. 547; 1 Greenl. Ev., sec. 111, 233;

*People* v. *Moore*, 45 Cal. 21; *People* v. *English*, 52 Cal. 212; *People* v. *Aleck*, 61 Cal. 138.)

The evidence shows that the conspiracy, if any existed, began subsequent to the time of the fire on Prewett's land, and ended with the death of Powers. It is claimed by counsel for respondent that the conspiracy was not ended until the dead body of Powers had been hung upon the tree. It would be sufficient to say that defendant is tried here for the murder of Powers, not for mutilating his dead body; but the evidence shows beyond controversy that the only conspiracy, if any existed, *to which defendant was a party*, was to hang Powers for the purpose of killing him, that his death might be a warning to others, not to kill him for the purpose of hanging his dead body up as a warning. Witnesses for the prosecution testified that the agreement to hang the body up as a warning was made *after the killing*, and that defendant was not present when the conclusion to do so was arrived at.

Among the declarations of deceased admitted in evidence were statements that he was going to leave the country, and wanted to leave his farm in charge of a neighbor; that Prewett wanted to get an outlet to the San Benito River to head off Melindy, and had commenced a suit against him (Powers) through spite; that Prewett had accused him of putting Bradley on his (Prewett's) land, but it was not true. These declarations as to the opinion and intention of Powers (some of which were made two years prior to the time of the conspiracy) were admitted in evidence, apparently upon the ground that anything admissible against Prewett was admissible against defendant, without regard to time or character. Conceding that they might have been competent evidence in a case against Prewett, it is impossible to perceive upon what principle of evidence they could be used against the defendant.

One of the witnesses (Clay) testified that while listen-

ing at a grating in the outside wall of the jail, he over-heard a portion of a conversation between Prewett and the defendant, while they were confined in jail; that he overheard "Irwin tell Prewett it would have been better to let the old s—— of a b—— leave." There is nothing to show to whom he referred. The witness was unable to state or to understand anything that was said by either party to the conversation before or after the remark quoted. It was error to admit this scrap of the conver-sation. (*People* v. *Keith,* 50 Cal. 139; *People* v. *Ah Mee,* 48 Cal. 238.)

The court instructed the jury: "Testimony has been introduced tending to show that some of the alleged conspirators, including the defendant, sought to conceal the fact that they had any knowledge of the death of Dr. Powers prior to the discovery of the body on the morning following his death; that the body was placarded and hung in the tree for the purpose, as the prosecution claims, of giving the impression that the death was caused by 150 vigilantes; that some of the alleged con-spirators were guilty of falsehood, evasion, and silence, when questioned concerning the death of Dr. Powers. If you believe these to be established facts by the evi-dence, you may consider them, or any other criminating circumstances found in the testimony, as tending in some measure to establish the fact of a criminal conspir-acy as charged."

This was error. No falsehood, evasion, or silence of a conspirator, occurring after the death of Powers, was admissible in evidence against the defendant under any circumstances. (*People* v. *Stanley,* 47 Cal. 118; 17 Am. Rep. 401.) And whether occurring before or after the death, such evidence, being the act or declaration of a co-conspirator, was inadmissible, as we have seen, to establish the fact of a criminal conspiracy.

The court also erred in refusing to instruct the jury that the refusal of the alleged conspirators, who had

been placed on the witness-stand and declined to testify, should not be considered by the jury in determining the question of guilt or innocence, and that the jury should not presume from such refusal to testify that the testimony, if given, would be against the defendant.

As the case is going back to the court below for a new trial, and the same questions may arise, it is proper to say that we see no error in its rulings upon challenges made to jurors, or upon objections made to the introduction in evidence of the card claimed to have been found on the body of deceased, or to the deposition of defendant taken by the coroner at the inquest, or to the testimony of Nash, given after the case had been once closed, or to McGrury's testimony.

Judgment and order reversed, and cause remanded for a new trial.

McFARLAND, J., SHARPSTEIN, J., and THORNTON, J., concurred.