[No. 10,056.]

## PEOPLE v. PETER STANLEY.

INCREASED PUNISHMENT FOR SECOND OFFENSE.—Where a person is subjected to increased punishment for a second offense, under Section 667 of the Penal Code, he is not twice put in jeopardy for the same offense, within the meaning of the Constitution. The increased punishment is not a

punishment for the first offense, but is inflicted because of the persistence in crime.

FLIGHT AS EVIDENCE OF GUILT.—The flight of a person suspected of crime is a circumstance to be weighed by the jury as tending in some degree to prove a consciousness of guilt, and is entitled to more or less weight, according to the circumstances of the particular case.

SAME.—Such evidence is received, not as a part of the *res gestœ* of the criminal act itself, but as indicative of a guilty mind. The rule extends only to the person fleeing, and cannot be extended to a case where a conspiracy to commit a crime has been entered into between two or more, and the flight of a co-conspirator is sought to be proved against another on his separate trial.

RES GESTÆ—ACTS OF ACCOMPLICE.—The acts of an accomplice are not evidence against the accused, unless they constitute a portion of the *res gestœ*, and occur during the pendency of the criminal enterprise, and are in furtherance of its objects.

PRESUMED ERROR.—Every error in the admission of testimony is presumed to be injurious, unless the contrary clearly appears.

APPEAL from the Municipal Criminal Court of the City and County of San Francisco.

The defendant appealed from the judgment and from an order denying a new trial. The other facts are stated in the opinion.

*Thos. V. O'Brien* and *Gordon H. Mott,* for Appellant.

*John L. Love,* Attorney-General, for the People.

That flight is but a slight evidence of guilt, I will admit, but slight as it is, it was the terror which guilt inspires that impelled this one of four guilty men, all guilty of one offense, to run, and this admission of guilt, however slight, was entitled to go to the jury for what it was worth. (*State v. Rand,* 33 N. H. 216.)

This case is much stronger than the one under advisement. In the New Hampshire case, the acts of the principal were admitted in evidence against an accessary, and they were not performed or executed in the presence of even the defendant on trial.

Among the acts admitted were "attempts to escape," "on the day when the offense was committed and the day after." Id. 203, Brief of Defendant's Counsel; see Opinion of the Chief Justice, at page 225.

The rule that "every error in the admission of testimony is presumed to be injurious, unless the contrary clearly appears," is not questioned. The question is whether it sufficiently appears that any testimony was erroneously admitted. While error is presumed to be injurious, it seems clear, upon authority, that in cases of this character the Court will not presume error, but that it must be shown. The rule in such cases is understood to be that if, upon any supposable state of the testimony, the testimony excepted to might have been properly admitted, the Court will presume that enough was shown to justify the admission. (*People* v. *Winters,* 29 Cal. 658; *People* v. *Donahue,* 45 Cal. 321; *The People* v. *King,* 27 Cal. 514; see also, *The People* v. *Trim,* 39 Cal. 79; *The People* v. *Wright,* 45 Cal. 260; *Todd* v. *Winans,* 36 Cal. 130; and Subdivision IV of *People* v. *Shuler,* 28 Cal. 496.)

By the Court, CROCKETT, J.:

The defendant was indicted, jointly with three other persons, for the crime of robbery, and was tried separately. In the indictment it was alleged that he had previously been convicted of petit larceny. At the trial he was convicted of assault with intent to commit robbery, and the jury also found that he had been previously convicted of petit larceny as charged in the indictment. The Court thereupon sentenced him to confinement in the State Prison for fourteen years, which is the greatest punishment prescribed by the statute for an assault with an intent to commit robbery. When the prosecution offered in evidence the record of his prior conviction for petit larceny, it was objected to on the ground that Section 667 of the Penal Code, which inflicts the highest punishment prescribed by the statute, if the accused had before been convicted of petit larceny, is unconstitutional and void. The Court, however, admitted the evidence, and this ruling is assigned as error.

The clauses of the Constitution which are claimed to have been violated are those which provide, 1st, that "no per-

son shall be subject to be twice put in jeopardy for the same offense;" and 2d, that "no cruel or unusual punishment shall be inflicted." On the first point the argument is, that if the punishment of the second offense be increased because of a prior conviction for another offense, the accused will be twice punished for the first offense. The ready answer to the proposition is, that he is not again punished for the first offense, but the punishment for the second is increased, because by his persistence in the perpetration of crime he has evinced a depravity, which merits a greater punishment, and needs to be restrained by severer penalties than if it were his first offense.

In Virginia, they have a similar statute, and in *Rand* v. *Commonwealth* (9 Grattan, 743), Mr. Justice Daniel, in delivering the opinion of the Court, says: "No constitutional or other obstacle, however, seems to stand in the way of the Legislature's passing an Act declaring that persons thereafter convicted of certain offenses committed after the passage of the Act may, if shown to have committed like offenses before, be subjected to greater punishment than that prescribed for those whose previous course in life does not indicate so great a degree of moral depravity. One convicted under such a statute cannot justly complain that his former transgressions have been brought up in judgment against him. He knew, or is presumed to have known, before the commission of the second offense, all the penalties denounced against it; and if in some sense the additional punishment may be said to be a consequence of the first offense (inasmuch as there could be no sentence for such punishment in the absence of proof of the first conviction) still it is not a necessary consequence, but one which could only arise on the conviction for the second offense, and one, therefore, which being fully apprised of in advance, the offender was left free to brave or avoid."

In Massachusetts a similar statute exists, and in *Ross'* *Case* (2 Pick, 170) Chief Justice Parker, in delivering the opinion of the Court, said: "The statute provides, that if any person having been before convicted of larceny, shall afterward commit another larceny, he shall be punished

more severely than if he had not previously committed the
like offense.   The punishment is enhanced from the charac-
ter of the culprit.   So the same statute provides that if a
person shall be convicted at the same term of three distinct
offenses, he shall receive a more severe punishment.   The
same objection would apply in these cases, as much as in
the one under consideration, that the culprit was punished
because he had committed prior offenses, and that he was
punished anew for those offenses.   But in our view, the
punishment is for the last offense committed, and it is ren-
dered more severe in consequence of the situation into
which the party had˙previously brought himself."   The
same views are expressed by Chief Justice Shaw in the
later case of *Plumby* v. *The Commonwealth*, (2 Metc. 413),
in which it is said:   "The true view of it, we think, is that
it imposes a higher punishment for the same offense upon
one who proves, by a second or third conviction, that the
former punishment has been inefficacious in doing the work
of reform for which it was designed."   They have similar
statutes in New York and many other States, and we might
multiply authorities on the point under discussion.   But no
case has been called to our attention, nor have we been
able to find one in which it was held that statutes of this
character are amenable to the objection now so earnestly
urged by counsel.   It may be, and doubtless is true, that
under our statute cases may arise in which the severity of
the punishment would be out of all just proportion to the
comparatively trivial nature of the offense.   But that is a
subject for the consideration of the Legislature and not of
the courts.

It appeared in evidence at the trial that the defendant,
and the three persons jointly indicted with him, were dis-
covered by a policeman in the act of attempting to perpe-
trate the robbery; and that immediately after the attempt
they proceeded to a saloon, where they were all soon after-
wards arrested by the same and another policeman; that
after leaving the saloon, and whilst being conducted to the
jail, one of them (other than the defendant) broke away
from the officer having him in charge, and attempted to es-

cape by flight; but after a considerable chase, was recap-
tured. The evidence of the attempted escape was admitted
against the objection of the defendant, and this ruling is
assigned as error. In admitting the evidence, the Court be-
low doubtless proceeded on the theory that the conspiracy
to perpetrate the robbery having been proved, the flight of
either one of the conspirators was admissible as a circum-
stance tending to prove the guilt of all. It is well settled
that the flight of a person suspected of crime is a circum-
stance to be weighed by the jury, as tending, in some de-
gree, to prove a consciousness of guilt, and is entitled to
more or less weight, according to the circumstances of the
particular case. Such evidence is received "not as a part
of the *res gestœ* of the criminal act itself, but as indicative of
a guilty mind." (Roscoe Cr. Ev. 18.) At most it is but a
circumstance tending to establish a consciousness of guilt
in the person fleeing; and it would be extending the princi-
ple to a great length to hold that the flight of one person
tends to establish the guilt of another person. We have
been referred to no case which goes to that extent.

In the *State* v. *Rand*, 33 N. H. 216, the defendant was
tried as an accessary, before the conviction of the principal,
on the charge that the principal had broken into and robbed
a bank, and the defendant was an accessary. The Court
very properly held that for the purpose of proving the guilt
of the principal, evidence of his concealment and flight,
immediately after the perpetration of the crime, was admis-
sible. But it was received solely to establish the guilt of
the principal, and not of the accessary.

The rule is well settled that the acts of an accomplice are
not evidence against the accused, unless they constitute a
part of the *res gestœ*, and occur during the pendency of the
criminal enterprise, and are in furtherance of its objects.
(*People* v. *Moore*, 45 Cal. 19; 1 Greenl. Ev. § 111; 3 Phil.
Ev. 396, note 234.)

The flight of the accomplice in this case occurred after
the criminal enterprise had ended, and was not in further-
ance of its object, nor a part of the *res gestœ*.

The evidence was therefore inadmissible. If all evidence

was before us, it might be apparent that the admission of the testimony could not possibly have prejudiced the defendant.    But, in the absence of the evidence, it is impossible for us to determine that it could not; and the rule is that every error in the admission of testimony is presumed to be injurious, unless the contrary clearly appears.

Judgment reversed, and cause remanded for a new trial.

Mr. Justice Niles did not express an opinion.

Wallace, C. J., dissenting:

1. I concur in the opinion of Mr. Justice Crockett upon the points of constitutional law discussed by him.    I lately expressed the same views in *Ex parte Gutierrez*, 45 Cal. 429.

2. But, in my opinion, the judgment of conviction ought not to be disturbed, merely because the evidence of the attempted escape of the prisoner's associates in crime was admitted.    It is conceded that if the attempt to escape could be considered to be part of the *res gestæ*—if the criminal enterprise, in which the prisoner had been jointly concerned with others, had not fully ended—then the evidence was correctly admitted.    The felonious assault with intent to commit the robbery, the arrest of the guilty parties, and the attempted flight of McGovern all occurred in such rapid succession in point of time, that it might be difficult to designate clearly the precise *punctum temporis* at which the criminal enterprise could be said to have come to an end.    But whatever conclusion is to be reached upon this point, I am of opinion that the evidence objected to and admitted did not affect the substantial rights of Stanley in a legal point of view.    The evidence of his guilt was without pretense of contradiction, and was overwhelming in its character.    I am satisfied, that without reference to the evidence objected to, the verdict must have been that rendered by the jury.    They must, as I conceive, have believed Wallace, the policeman, else they could not have convicted the prisoner at all.    Wallace swore that he was an eye-witness of the felonious assault made by the prisoner and his confederates, for which the indictment pro-

ceeds. If the jury believed this evidence, the proof of the attempted flight of McGovern, one of the gang, made in the immediate presence of the prisoner, just after they had both been arrested together, was immaterial, and the error in admitting it, if error it was, was a harmless error. It was one which did not—could not—injuriously affect a substantial right of the prisoner upon his trial; one for which he is not entitled to a reversal of the judgment at our hands, for under Section 1,258 of the Penal Code mere technical errors below, not affecting substantial rights of the prisoner, are to be disregarded here.

It is conceded by my associates that if all the evidence given at the trial were to be found in the record, it might indeed have appeared that the alleged error in this respect was immaterial; but it is said that in the absence of the entire evidence no presumption that the error was harmless to the prisoner can be indulged. And why, it may be asked, is not all the evidence brought here? The fault in that respect, if it be one, is that of the prisoner. It is he who presents the record, and who assumes the burden of making manifest an error affecting his substantial rights below. All the intendments here, consistent with the records as presented, go to support, not to overthrow, the judgment rendered in the Court below. This rule is familiar in all proceedings in error, be they civil or criminal in their character. We are not to reverse a judgment because possibly, or even probably, error may have occurred below. Nothing is better settled than that a bill of exceptions, whether in a civil or criminal case, is a pleading of the party who relies upon it. It must make a case in his favor affirmatively. If open to the charge of ambiguity, uncertainty, or omission, it must, like any other pleading, be construed most strongly against the party who relies upon it. (*People* v. *Williams*, 45 Cal. 25.) If, indeed, at the trial of the prisoner, the evidence given upon the issue was of such a character as to lend apparent weight and importance to the circumstance of McGovern's attempted escape from the custody of the officer, the prisoner could and ought to have made it so appear by embodying the whole of the evidence in the record.

Had he done so, it is conceded by my brethren that it might have appeared that no injury was done to him by admitting the evidence complained of. The presumption in the judgment of the law is, that it would have so appeared. The prisoner has failed to bring up all the evidence, and I am unable to see upon what process of reasoning he has, by such failure, created an intendment in his own favor, which entitles him, in point of law, to a reversal of the judgment.

I am, therefore, of opinion that the judgment should be affirmed.