Potter, J.
This is an application upon behalf of the defendant for a stay of execution of the judgment of the court of oyer and terminer, convicting the defendant of the crime of bribery, and the sentence of the court to imprisonment and the payment of a fine, pending the determination of his appeal therefrom to the general term of the court.
The application is made under section 527 of the Code of Criminal Procedure. That section is as follows: “An appeal to the supreme court, from a judgment of conviction, or other determination from which an appeal can be taken, stays the execution of the judgment or determination upon filing, with the notice of appeal, a certificate of the judge who presided at the trial, or of a judge of the supreme court, that in his opinion there is reasonable, doubt whether the judgment should stand, but not otherwise, except that when the judgment is of death, the appeal stays the execution of course until the determination of the appeal. And the appellate court may order a new trial if it be satisfied that the verdict against the prisoner was against the weight of evidence or against law, or that justice requires a new" trial, whether any exception shall have been taken or not in the court below.”
Every person convicted of a felony or a misdemeanor has an absolute right to appeal. He needs no certificate or consent for that purpose but his appeal will not stay the execution of his sentence (except in the case of a sentence of death) unless he obtain a certificate of a judge of the supreme court.
Under this section, a certificate that, in his opinion, there is reasonable doubt whether the judgment should stand, is essential to a stay.
This devolves the duty upon the judge to whom the application for such certificáte is made, to form an opinion whether the judgment should stand and such judge cannot form such opinion without a careful examination of the whole case, involving the indictment, the evidence and the proceedings upon the trial and the charge of the trial court to the jury, who rendered the verdict that the defendant was guilty.
Under a liberal and just construction of the language of this section, a judge is called upon to review the entire evidence, the charge of the trial court and the law of the whole case, for he is required by it to form an opinion whether the judgment should stand and the appellate court *158 is required to set aside the judgment and order a new trial, if it be satisfied that the verdict was against the weight of the evidence or against law, or that justice requires a new trial whether any exception shall have been taken in the court below.
Having become impressed with the clear conviction that the trial court fell into error in the admission of some of the evidence offered by the prosecution, and that for those errors the appellate court must grant the defendant a new trial, I have not, therefore, examined the evidence any further than it had some relation to the objections and exceptions to the evidence received upon the trial and the charge of the trial judge.
I have been called upon to examine the charge, and I am quite free to say that the charge is remarkably clear, fair and faultless, except in presenting for the consideration of the jury, those portions of the evidence which I think were erroneously received upon the trial. In my opinion, incompetent evidence was received upon the trial in these respects:
First. The testimony given by the defendant before the railroad committee of the senate, authorized and directed to investigate the means and methods used to obtain the consent of the local authorities to construct the Broadway 'Surface Railroad.
Second. The fact of the absence of persons charged in the indictment with the defendant with the crime of bribery and their sojourn in Canada, as the excuse of their non-production as witnesses against the defendant by the prosecution ; and
Third. The opinion or supposition of the witness Miller as to the motive or purpose of DeLaey when he handed Miller the five thousand dollars.
The testimony of the defendant was taken before the senate committee, under resolution passed by the senate, as follows:
Whereas, The constitution and the statutes provide that there shall be no street ralroad constructed or operated in or upon any street, without (among other requirements) the consent thereto first having been obtained of the local authorities having control over such streets, or the portion thereof upon which it is proposed to construct and operate such a railroad ; and,
Whereas, It has for some time been charged, and is now being continually charged by the New York papers, without regard to politics, and with an accord and earnestness almost unprecdented that the consent above referred to was obtained for the construction and operation of the railroad now in operation, in and upon Broadway, in said city, *159 through fraud, and by and through corrupt influence and bribery of such authorities; and,
Whereas, The “local authority" having control over said Broadway, and which granted the right and gave the consent referred to in said alleged corrupt manner, was the aldermen of said city ; and,
Whereas, A strong and reputable sentiment in New York city demands at the hands of the senate an investigation of the methods in obtaining such consent; now, be it therefore
Resolved, That the railroad committee of the senate be, and hereby is authorized by the senate to fully investigate fully all matters relating to the methods of either the Broadway Surface Railroad Company, or of any other person or corporation, relating to or in obtaining such consent, and also to investigate fully the action of the board of aldermen of said city, which granted or gave the_ same in respect thereto; and said committee is hereby given full power and authority to prosecute its investigations in any and all directions, in its judgment necessary to a full and complete report to the senate, as to all matters relating to the granting of said consent, and the influences and inducements which lead thereto.
Resolved, That said committee report to the senate in relation to the matters with such recommendations as in its judgment the public interest may require, and particularly as to the policy of an amendment to the constitution vesting the power to grant such consent in some other authority than as present provided.
That said committee is hereby given given full power and authority to send for persons and papers, also to employ a stenographer and such counsel, accountants and experts as it may deem necessary to the accomplishment of its said work. It is further empowered to hold its sessions in the city of New York and conduct its investigation there; the committee shall conclude its investigation in time for report to the present senate on or before April 15, 1886. The sergeant-at-arms of the senate shall at afl times attend said committee and serve all subpoenas issued thereby, and perform any and all duties as sergeant-at-arms of said committee.”
The testimony given by the defendant in answer to questions put to him by the senate committee and its counsel, were received in evidence over objection and exception, upon the trial of the indictment of the defendant for bribery of one of the board of aldermen, in voting for the consent of the aldermen to construct the Broadway street railroad.
*160 I am very decidedly of the opinion the court erred in the admission of such testimony.
The rule at common law and before the adoption of the constitution of the United States or that of any of the states, was that a witness should not be obliged to give evidence which could be used against himself in any criminal trial.
That principle is embodied in the constitution of the United States and in that of this state, in these words: “No person shall be compelled in any criminal case, to be a witness against himself. .
The same principle I apprehend is substantially contained in express terms in the bill of rights or constitution of every state of the union. In the declaration of Massachusetts the principle is expressed in this form: “No person shall be compelled to accuse or to furnish evidence against himself.” Emery’s Case, 107 Mass., 173; 9 Am. Rep., 22; Boyd v. United States, 116 U S. Rep., 616-630; State v Froiseth, 16 Minn., 296; People v. Hackley, 24 N. Y., 74; People v. Mather, 4 Wend. Rep., 229.
The Fmery Case arose before a committee of the legislature of Massachusetts, appointed to investigate suspected bribery of constables or policemen. In regard to the existence and extent of this constitutional immunity from self-crimination, the court says: “By the narrowest construction this prohibition extends to all investigations of an inquisitorial nature instituted for the purpose of discovering crime, or the perpetrators of crime, by putting suspected parties upon their examinatian in respect thereto, in any manner although not in the course of any pending prosecution.”
This protection applies to witnesses called to give testimony upon trials in civil as well as in criminal actions. Burns v. Kempshall, 24 Wend., 360; Close v. Olney, 1 Den., 319; Perrine v. Striker, 7 Paige, 601; Abbott’s Trial Evidence, 620.
This constitutional protection continues in all the plenitude its language imparts, until the legislature shall expressly remove the immunity afforded by the constitution from a witness and give him instead immunity by law. The legislature has the power to do this, provided, if it makes the protection by law as ample as the protection by the constitution, but not otherwise. See cases above, People v. Mather, People v. Kelly, Boyd v. United States, Emery Case, and others cited in that connection.
This protection by law is effected by providing that the testimony given by a witness upon a specified subject shall not be used against him. Under the constitutional immunity, the witness could prevent the use of his testimony *161 against himself by refusing to give any testimony which might be so used. Under legal immunity the same result is attained by a provision of law that his testimony shall not be used against him.
While the result is the same, the practical operation of the principle varies according to its origin. If derived from the constitution, the witness must assert his privilege and decline to answer when the question is asked, or he waives his privilege. If derived from the law, he must answer the question and assert his privilege when his answer is offered in evidence against himself, or he waives his privilege. This evidence was objected to upon the trial of the defendant, but was received notwithstanding, and thus the defendant was deprived of his protection without his assent.
Where the answer to the question will not criminate the witness, he is bound to answer or be punished for contempt. In the same manner he may be punished for contempt if he refuses to answer when the answer cannot be used against him.
That brings me to the consideration of the question whether the defendant was compellable to give the evidence before the senate committee that the prosecution was permitted to introduce against the defendant upon his trial for bribery. The solution of this question depends upon two other questions and they are, was the senate committee authorized to require the defendant to make answer to its questions, and was the defendant bound to answer the questions put to him by the committee by reason of the protection afforded him by the law?
This committee was one of the standing committees of the senate of this state. As such there is no question that it was legally constituted. There is no question that the resolutions hereinbefore set forth were legally passed. Xor is there any question that the legislature had the power to institute the inquiry and make the investigation whether the consent of the board of aldermen to the construction of the Broadway Railroad was obtained through “fraud, corrupt influence and bribery of such authority,” and further, to investigate fully all matters relating to the methods of either the Broadway Surface road, or of any person or other corporation relating to or obtaining such consent, and also to investigate the action of the board of aldermen, or any member thereof, in giving such consent, etc., and that said committee report in relation thereto with such recommendations as the public interest may require, and particularly as to the policy of an amendment of the con *162 stitution vesting the power to grant such franchises in some other authority than as at present provided.
The power of obtaining information to enable it to perform its legislative functions, to recommend and provide-for a change of the constitution, etc., is undoubted. Such has been the uniform practice of all legislative bodies and their power to subpoena and examine witnesses within those limits and to punish witnesses who refuse to appear and to testify has been in numerous instances sanctioned by the courts. The People ex rel. McDonald v. Keeler, 99 N. Y., 463; The Emery (Mass.) Case, above cited.
The Penal Code recognizes and re-enacts the common law in this respect in sections 68-69, which provide that a person who, being present before either house of the legislature, or any committee thereof authorized to summon witnesses, willfully refuses to be sworn or affirmed, or to answer any material and proper question, is guilty of a misdemeanor.
So much as to the authority of the committee to ask material and proper questions and to compel answers thereto.
Were the questions asked by the committee of the defendant, material and proper?
The resolution of the senate was to the effect that this committee should investigate whether the consent to the construction of the Broadway Railroad was obtained through bribery of the board of aldermen and also as to the-methods of that railroad or person or any' other corporation in obtaining such consent. It is manifest from the terms of the resolution that the committee was required to investigate and report as to both the acceptors and givers of bribes.
But if that was not manifest from the import of the resolution it would follow by necessary implication; for there cannot be a bribed without a briber. The process requires at least two co-operative parties.
So'much is necessarily involved in any investigation into the making and performing of an agreement in relation to-any matter whether legitimate or otherwise.
The investigation was not alone to ascertain who were-bribed but also to ascertain who the bribers were.
The defendant was called before that committee asked in substance how much money had been raised, how it was-raised, into whose hands it and portions of it had come and what he at least had done with that which came into his-hands. Are not such material and proper questions and would not the answers to them, show or tend to show whether there was bribery or not, and who the parties to- *163 the bribery were ? I cannot imagine questions more material and proper for such purpose.
The only remaining question is, whether the answers given by the defenant to those questions before the investigating committee were admissible against him upon Ms trial for bribery and that depends upon the question whether the statute giving, protection to witnesses upon the subject of bribery, includes witnesses giving testimony upon that subject before the legislature or a legislative commit tee ? That statute is the 79th section of the Penal Code, which is as follows: “ A person offending against any provision of any foregoing sections of this Code relating to bribery is a competent witness against another person so offending, and may be compelled to attend and testify upon any trial, hearing, proceeding or investigation, in the same manner as any other person But the testimony so given shall not be used in any prosecution or proceeding, civil or criminal, against the person so testifyingOne of the foregoing sections defines the crime of bribing aldermen and another of them prescribes the punishment thereof. It is conceded that if the defendant had given this testimony upon a trial or judicial proceeding, hearing or investigation, he would be entitled to the protection guaranteed by this statute. The case of The People v Keeler (99 N Y , 476), holds that the legislature has judicial power and functions and that the taking of testimony for certain purposes is a proper exercise of such judicial power and function.
The language of this section is very general employing terms without any qualification whatever. There is no word qualifying one of these terms used to indicate the occasions for the examination of witnesses and taking their testimony. The words used viz- trial, hearing, proceeding and investigation, would seem to embrace every conceivable legally authorized or judicial occasion.
There is nothing to indicate or distinguish what kind of a trial, hearing, proceeding or investigation is intended The word investigation is and has been in use for an indefinite period of time to express the character and functions of legislative committees and has become the index word in the books containing the laws and proceedings of legislative bodies. The word has a history in connection with the laws which have been passed from time to time upon the subject of bribery.
Neither the provisions of the Revised Statutes in relation to bribery nor the act of 1853, amending the Revised Statutes, use the word investigate. They only com pel a witness to testify upon that subject before any magistrate, grand jury or any court.
By the act of 1869, chapter 742 (which was entitled an act *164 for the more effectual suppression and punishment of bribery), provides no person shall be excused from testifying in regard to the subject of bribery on any examination or trial or any investigation by any committee of the legislature, or either house, etc., and also provides that the testimony by such witness on such trial or investigation shall not be used upon the trial of any action, either civil or criminal, against him.
The word investigation in connection with bribery occurs for the first time in this act of 1869. It occurs next in the act of 1881, the Penal Code, in the 79th section.
It is generally understood by the bench and the bar' that the authors of the Penal Code were, as a general rule, simply designed to codify the existing criminal law, of which the act of 1869 formed a part. It is reasonable to presume, therefore, that they retained and used the word “investigation” in the same-sense in which was used in the act of 1869. That presumption must prevail, or we are forced to the conclusion that the legislature of 1869 used that word in connection with bribery to express one meaning and the legislature of 1881 used the same word to express a different meaning in statutes relating to bribery.
The succeeding part of section 79 seems to confirm this view, for it affords a witness testifying in relation to bribery with which he was concerned, an unqualified exemption from the use and effect of his testimony in all prosecutions and proceedings, civil and criminal.
Under the construction of the earlier laws upon the subject of bribery, the witness could only be required to testify in relation to bribery before a magistrate, grand jury or court, and was only protected from its use against him in criminal proceedings But, under the existing law, he can be compelled to give testimony before any court, hearing, proceeding or investigation of whatever kind or nature, and is guaranteed protection in ah prosecution or proceed ings against him, both civil and criminal
In other words, the constitutional privilege, which was universal, is by law replaced by a universal exemption in respect of bribery. If there was a doubt in relation to the meaning of this statute of exemption, inasmuch as it is a substitute for a privilege guaranteed by the constitution, the courts would give the statute a liberal construction. People v Kelly 24 N. Y , 74; Henry v. The Bank of Selina, 5 Hill, 523, Perine v Striker, 7 Paige, 598.
Consider for a moment where the contention of the prosecution would lead. A witness may be compelled before the criminal courts to give evidence in relation to the crime of bribery with which he was connected, and the statutes protects him from its use against himself in all *165 places and upon every occasion; and yet it is argued that the legislature intended and their laws provide that a citizen may be called before a legislative committee and there compelled to give the same testimony, and that testimony may used against himself when upon trial for such bribery. If that be so, the legislature has set a trap for the citizen and baited it with delusive words.
It seems to me very clear that the language of section 79 allows, if it does not require, that construction, and such construction will avoid a conflict with the constitution. Several cases already cited support these views.
The case of The People v. Keeler. This was a case, like the case under consideration, of an investigation before a standing committee of the senate into alleged fraud by the commissioner of public works of the city of New York. The relator was adjudged to be committed for refusing to appear and testify before the committee.
The Emery Case (107 Mass., 172), was a legislative investigating committee of Massachusetts, empowered and directed to investigate in relation to the-alleged bribery of constables. The relator was asked, have you ever paid any money to any state constable ? The legislature imprisoned him for contempt in refusing to answer the question The court discharged him from the imprisonment, not upon the ground of want of power in the legislature, or because the question and answer were not material and proper, but solely upon the ground that the legislature had not provided legal protection as ample as his constitutional privilege.
People v Nathan The defendant was indicted (sections 68 and 69) for refusing to testify before a senate investigating (the Roosevelt) committee upon the subject of bribery. He was tried and convicted of the misdemeanor specified in those sections in a court of oyer and terminer, held in the city of New York, and sentenced, the court holding that he was bound to testify before said committee upon the subject of a bribery, with which it was alleged he was connected.
It was said, upon the argument, that Justice Van Brunt held that this evidence was admissible, upon the motion to set aside the indictment against the defendant, on the ground of its admission before the grand jury that found the indictment.
I have carefully read the stenographer’s minutes upon the argument of that motion and the remarks of Justice Van Brunt, and I do not understand that he passed upon the subject of the legality of that evidence, but held, if it was illegal, its admission before the grand jury would not justify the setting aside the indictment under the decision of the court of appeals in the Peatra Case. Justice Van Brunt, *166 however, did remark after intimating that simply because the grand jury received illegal evidence would not justify the setting aside of an indictment, “But when it comes to his (Sharp’s) trial, and evidence of that kind, around which the constitution throws its shield, is used against him, then the constitutional privilege becomes operative, and it does not become operative before that time, because it is upon the trial that the question of constitutional privilege applies.” The district attorney thereupon asked or suggested that Justice Van Brunt do not pass upon that subject, and the subject was dropped from that time.
It seems to me very plainly that Justice Van Brunt expressed unmistakably his opinion that such evidence could not be read upon the trial of defendant.
Judge Smyth expressed a decided opinion on" the trial of McQuade, convicted of receiving a bribe for his vote on the Broadway road, that the evidence given by McQuade before this same senate committee could not be used against Mc-Quade upon his trial, and the district attorney did not after this expression of opinion press the evidence, but withdrew it, and did not again offer it, although the court granted the opportunity.
The next ruling and exception I propose to examine relates to the failure of the prosecution to produce as witnesses upon the trial of the defendant several persons alleged in the indictment to be guilty of the bribery with the defendant and of their absence from the trial and their sojourn in Canada as the excuse for such non-production.
The authorities are clear to the effect that the flight of one co-defendant or co-conspirator, after the perpetration of the crime, is inadmissible upon the trial of the associate. People v. Stanley, 47 Cal., 113 (Am. R., 401); State v. Rand, 33 N H., 216; Greenl. Ev , § 3, 3; Phil., 396, n. 234; Whar. Crim Ev, 699.
Indeed it was conceded by the court and district attorney that the flight of a conspirator after the conspirator’s work has been accomplished, is inadmissible upon the trial of one of the conspirators to prove his guilt. But the court allowed the prosecution to prove their flight and sojourn in Canada, concededly improper evidence, to excuse the prosecution from performing their alleged duty to produce them as witnesses to support the prosecution in proving the guilt of the defendant, a co-conspirator.
Was there any such duty resting upon the prosecution ? The theory of the prosecution was, and the allegations in this indictment are, that these persons, Maloney and others (in Canada), were engaged in the alleged bribery transac • tionwith the defendant and stood indicted for such bribery
No authority was presented or referred to on the oral *167 argument of the question of the admissibility of this evidence showing that it was the duty of the prosecution to produce these persons as witnesses, or in their absence the correlative duty of accounting for their non-production. Nor has any authority in support of such duty been presented upon the elaborate written argument of this motion. I am not aware of any such rule in a civil action, much less in a criminal trial.
Bleecker v. Johnston (69 N. Y., 309) was a civil action involving the issue whether or not a contract of employment was made between the plaintiff and tire defendants partners. The plaintiff testified it was made between him and defendants. One of defendants only was called, who contradicted the plaintiff as to the conversation. It appeared both defendants were present, yet one was not called, though in the city at the time of the trial. The court was asked to and did charge that it was the duty of every party to produce every witness who can convey any light to the jury, etc.
This was held by the court of appeals to be erroneous and that there was no such rule even in a civil case.
I am aware that a principle somewhat similar has been applied in the trial of criminal cases, but the application of the principle in those cases was against the defendant and not against the prosecution in this wise; that where the evidence of the prosecution presses hard upon the accused, and the accused knowing of witnesses who could contradict or explain the pressing evidence, and having it in his power to call them and omits to call them, the jury may draw unfavorable inferences against the accused from such facts. People v. McWhorter, 4 Barb., 438; Gordon v. People, 33 N. Y., 513.
But I can see no reason or propriety in holding that any such duty rests upon the prosecution. It is incumbent upon the people to overcome the presumption of innocence, and to establish the guilt of the accused beyond a reasonable doubt upon evidence.
That result cannot be aided or helped out by any presumption of what witnesses not produced may be supposed to know.
Hence as matter of law there was no such duty resting upon the prosecution, and it was not proper for it to excuse the weakness of the case it had made against the accused or to apologize for its weakness in any manner whatever. But suppose the law had imposed a duty of this nature upon the people, Under some circumstances, can it be reasonably held that such duty arises from the circumstances in this case. These witnesses (in Canada), were charged with complicity in the guilt of the defendant, and were them *168 selves indicted for it. Assuming that they were guiltyr would they be likely to come and testify to it ? or testify to the guilt of this defendant ? If they had been sitting in the court room under a subpoena, they would have claimed their privilege and refused to testify, unless perhaps they might have consented to testify under the same circumstances, or upon the same terms that the witness Fulgraff testified against the defendant.
I think it is very rare, or never, except in case of necessity that the prosecution relies upon the testimony of an. accomplice or a co-defendant to prove its case. If the accomplice or co-defendant should waive his privilege and. give testimony, it would not probably be the truth or be reliable, or if by an understanding with the public prosecutor, the witness himself is not to be prosecuted, might be induced to tell the truth, the law as well as common sense requires that he should be corroborated before he should be credited. The prosecution is under no duty to call such witnesses.
But upon this trial such duty was assumed, and under such assumption evidence illegal and dangerous was ad mitted, and though the jury were told by the court not to regard it as tending to prove the guilt of the accused, yet every experienced criminal judge and lawyer knows from his own observation in such cases, the jury do not, or will not if they could, disregard it in making up their verdict. But the jury could, and if we had any assurance that they had disregarded the evidence in making up the verdict they rendered in this case, the assumption upon which that evidence was received is merely colorable, and the evidence so received is a nocuous element in this case, for it implied, or might lead the jury to an implication that it supplied the case with the necessary proof, or served to strengthen a weak case.
Where it is clear that the avowed object of, testimony is colorable merely, its admission is error whether it was considered by the jury or not, or whether it was calculated to mislead the jury as to the strength of proof required of the prosecution to make out its case. Coleman v. The People, 55 N. Y., 81.
I have moreover what appear to my mind as very reasonable doubts whether there was not error in receiving as evidence the opinion of the witness Miller, a witness called by the prosecution.
He was an alderman and voted at all times for the Broadway Railroad and was one of the railroad committee. He was not present at the early August meeting and did not sign the call for it. He testified that he received $5,000 from He Lacy in bills of a large denomination in a month or so after *169 the Broadway resolution was passed by the board of aider-men, and that De Lacy said when he gave him the bills: “ There is something to buy election tickets with, ” and that, within a day or two afterwards he returned the identical money to De Lacy, and that there was no agreement or talk or understanding with De Lacy at any time that the money was given him on account of his vote for the resolution.
The witness then in answer to the question: “Tell us what did you think at the time he gave it to you for, ” was allowed to answer over objection and exception, “I supposed it was for the Broadway railroad.”
The rule is that except in cases of value of property, of science and skill, etc., from experts, etc., the witness can only testify to facts,' and not to his opinion, thoughts or suppositions.
It is the province of the jury to draw all proper and legitimate conclusions or inferences.
It was entirely proper in the discretion of the trial judge to allow the prosecution to ask and ply an unwilling witness with leading questions to obtain competent testimony, but the rule goes no further. The unwillingness or inability of a witness to testify to facts does not make his suppositions or thoughts competent evidence.
Entertaining these views in regard to the portions of the evidence reviewed, and the rulings of the trial court in respect to it, my duty is plain and imperative to grant the application for a stay of-the execution of the judgment convicting the defendant.