Bradbury, C. J.
The plaintiff in error challenges the power of the grand jury to return an indictment against him for being an habitual criminal; denies that the indictment states facts sufficient to constitute him an habitual criminal; denies the authority of the petit jury to find in their verdict that he is an habitual criminal, and the power of the court to sentence him to imprisonment for life as such. He bases his contention, first, upon the language of the habitual criminal statute, which he claims is too vague and uncertain to express any definite legislative intention; and, second, that if it can be construed so as to express a clear legislative intent to authorize such proceedings as were had in the court of common pleas in this case, then the act conflicts with both the state and national constitutions,. and is therefore void. So much of the statute as becomes material to consider, reads as follows:
Section 2, vol. 82, Ohio flaws, page237: “Everyperson who, after having been twice convicted, sentenced and imprisoned in some penal institution for felony, whether eommited heretofore or hereafter, and whether committed in this state or elsewhere within the limits of the United States of America, shall be convicted, sentenced and imprisoned in the Ohio penitentiary for felony hereafter committed, shall be deemed and taken to be an habitual criminal, and on the expiration of the term for which he shall be so sentenced, he shall not be discharged from imprisonment in the penitentiary, but shall be detained therein for and during his natural life, unless pardoned by the governor, and the liability to be so detained shall be and constitute a part of every sentence to imprisonment in the penitentiary; provided, however, that after the expiration of the term for which he was so sentenced, he may, in the discretion of the board of managers, be allowed to go upon parol.”* * *
The foregoing language of the statute has been made the subject of a severe analysis and criticism by counsel for the plaintiff in error. The circumstances, that the statute is supplemental to the provisions theretofore enacted for the management of prisoners confined in the penitentiary, instead of being, in terms, an increment to that title of the *435 Revised Statutes which relates to crimes and their punishment, and to criminal procedure, is also adverted to as tending to render the legislative purpose still more obscure. The language of the statute is not as simple and precise as could be wished, but that its meaning is at all obscured by the circumstances that it is made a supplement to the statute which regulates the management of _ convicts in the penitentiary, cannot be maintained. No doubt, the subject of legislation should be kept steadily in view as an important factor in correctly construing the legislative language, in all'cases; and that subject may be made more apparent in most; if not in all instances, of construing a supplemental statute, by recurring to the original statute; for presumptively the legislature in enacting the supplemental act had in view some purpose, cognate, at least, to that which was the subject of the original statute.
The fact that the statute*under consideration was enacted as a supplement to the act “ relating to the imprisonment of convicts” (82 Ohio Law, 237), instead of being made supplementary to that title of the Revised Statutes which creates- and defines offenses, is therefore a significant circumstance, tending to show that the legislature was not contemplating the creation of a new offense. And, when we examine the language employed, there is an entire absence of any phraseology defining or creating any offense whatever. We therefore conclude that there was no purpose to create one. If, however, there was a purpose to create a class of convicts whose incorrigibility had been established by a series of convictions for felonies, it could not have been placed in any more appropriate connection than that in which it is found. But, in whatever connection, or in whatever terms the legislature may choose to express its will, it is the duty of the court to ascertain and declare that will, if it can be gathered from the language employed; and the connection in which the legislatnre may place the statute is a circumstance that can only become important when the language is ambiguous. To whatever criticism the language of the section under consideration is subjected, we think it clearly evinces an intention that upon *436 every third conviction for a felony the convict shall be sentenced to a specific term of years in the penitentiary, during which the power of parole shall be suspended, and that on the expiration of this specific term he shall remain in the penitentiary until discharged by death, parole or pardon. Two additional consequences are thus attached to the third conviction ; the suspension of the power of parol for a specific term to be fixed by the court, and imprisonment for life thereafter, thereby securing society from the depredations of a dangerous criminal during a specific term, unless he should be pardoned by the governor, and thereafter for life if neither paroled nor pardoned.
Plaintiff in error also contends that if the statute under consideration should be construed so as to subject one guilty of a third offense to life imprisonment, yet under its provisions he would not become an habitual criminal until after his conviction, sentence and imprisonment for the. third felony; that until then the grand jury could not indict him as such, the jury find him guilty thereof, nor the court sentence him to imprisonment for life. On this part of the subject the intention of the legislature is more awkwardly expressed than elsewhere, but when the entire act is considered, it is quite clear that the liability to imprisonment during life is made by the statute an inseparable incident of every third conviction for a felony, the statute in express terms declaring that the liability to be so detained, shall be and constitute a part of every sentence to imprisonment in the penitentiary. The language of the statute is “every sentence; ” but that should be taken to mean every sentence for a felony falling under this statute—that is, a third felony—for it is only on account of a third felony that the convict is made liable to a life sentence. The statute in question did not change the established course of procedure; it attached certain consequences to a third conviction, and whatever averment, proof and verdict is necessary to establish this third conviction, must be had under the existing criminal procedure. This court held in the unreported case of Ex parte Hiser, that the indictment under this statute should set forth the two prior convictions, and the sentence and commitment of *437 the prisoner to some penal institution on account thereof. The indictment against the plaintiff in error set forth those facts with sufficient particularity to apprise him of the evidence to be adduced to establish their existence, and to enable him to defend against them. The proof should cover every material averment of the indictment, and the verdict establish every fact made necessary by the statute to the judgment pronounced by the court. We therefore hold that the grand jury, the trial jury and the court of common pleas, were each authorized by law to perform the various functions which the record discloses they respectively performed during the progress of the prosecution.
The first of the two previous offenses charged against the plaintiff in error, and his conviction and commitment to a penal institution on account thereof, all occurred before the statute under consideration was enacted; and for that reason he contends that, as the statute under consideration imposes upon him, on account of this former offense, an additional penalty to that imposed by the law as it stood when he commited the offense, it has, as to him, in the case under consideration, an unconstitutional operation. This view of the operation of the statute is not without plausibility, because it is apparent that, were it not for this earlier offense and his conviction and imprisonment on account of it, the penalty denounced by the statute against one who commits a third offense couldnot have been imposed upon the prisoner under the facts disclosed by the record. That the earlier offense, conviction and imprisonment of the-prisoner, were necessary factors to establish his status of an habitual criminal and his consequent detention as such in the penitentiary for life, must be conceded.
The legal effect of those proceedings, however, was simply to advance him one step towards a class of offenders who were to be subjected to the heavier penalty. The additional penalty was not imposed as a punishment for the first offense, nor for the second one, but because, having been convicted of their commission, he became one of a class of dangerous criminals, against whom more rigorous measures should be invoked. Had he abandoned his evil practices, after his first inprisonment, or even after his *438 second term had ended, the consequences of which he now complains would not have followed. This he did not do, but instead, chose to commit a third offense, and that too with his eyes wide open; for he knew, or was bound to know, when he committed this last offense, that he had become one of a class against whom severer measures had been declared to be necessary if he should again be convicted. It is the third conviction that devotes his future to continuous confinement. A. law cannot properly be considered retroactive when it. apprises one who has established, by previous unlawful acts, a criminal character, that if he perpetrates further crimes, the penalty denounced by the law will be heavier than upon one less hardened in crime. In ’such case the party is informed before he commits the subsequent offense of the full measure of the liability he will incur by its perpetration, and therefore does not fall within the class that is entitled to the protection afforded by the constitutional guaranty against the enactment of ex post facto, or retroactive laws, for the object sought by those guaranties, in respect to this kind of legislation, is that no transgressor of a penal statute, shall be subjected by subsequent legislation, to any penalty, liability or consequence, that was not attached to the transgression when it occurred.
The conclusions to which we have arrived are supported by the highest tribunals of a number of the states of the Union, and by authors of acknowledged authority in this department of jurisprudence. Cooley’s Cons. Eim., 327; 1 Bish. Crim. Eaw, section 959-965; Kelly v. The People, 115 Ill., 583; Ingalls v. The State,Wis., 647; Rand v. Commonwealth, 9 Grat., 738; The case of William Ross, 2Pick. (Mass.), 165; Plumbly v. Commonwealth, 2 Metcalf (Mass.), 413; Commonwealth v. Graves, 29 N. E. Rep. (Mass.), 579; Ex parte Gutierrez, 45 Cal., 430; People v. Peter Stanley, 47 Cal., 113; Commonwealth v. Marchand, 29 N. E. Rep. (Mass.), 578.

Motion for leave to file a petition in error overruled.