<hr/>

[No. 496.—In Bank.]

# PEOPLE *v.* HODGDON.

CRIMINAL LAW—PRACTICE—BILL OF EXCEPTIONS.— The case was tried by one judge, and the motion for new trial heard by his successor in office. *Held,* on appeal from a judgment of conviction and an order denying a new trial, that the bill was properly settled and authenticated.

CONSTRUCTION OF STATUTE.— Where a statute is ambiguous, such a construction will be given to it as not to deprive a party of a substantial right.

EVIDENCE—CRIMINAL LAW—DYING DECLARATION.—It is essential to the admissibility of a dying declaration, that it appear that it was made under a sense of impending death; and where it appears that the deceased had any expectation or hope of recovery, however slight it may have been, and though death actually ensued within an hour afterward, the declaration is not admissible.

APPEAL from a judgment for the plaintiff, and from an order denying a new trial, in the Fourth District Court, City and County of San Francisco. The judgment by MORRISON, J., and the order by EVANS, J.

The facts are stated in the opinion.

*Alexander Campbell,* for Appellant.

*The Attorney-General,* for Respondent.

Ross, J.:

The defendant was indicted for the crime of murder, committed upon the person of one Emma C. Downs. A trial was

had in the late District Court of the Fourth Judicial District in and for the City and County of San Francisco, while the Hon. Robert F. Morrison was the Presiding Judge of said Court, which trial resulted in the rendition of a verdict on the 14th day of October, 1879, finding the defendant guilty of murder in the second degree.. Subsequently Judge Morrison resigned his position as Judge of said Court, and the Hon. O. P. Evans was appointed in his stead. A motion for a new trial was duly made in said cause, on behalf of the defendant, which motion came on for hearing before Judge Evans on the 29th day of December, 1879. The motion was denied, and judgment was thereupon entered against the defendant. Thereafter the defendant prepared and served upon the District Attorney a bill of exceptions, which bill was, on the 25th day of February, 1880, settled and allowed by the last-named Judge in words and figures following : " The foregoing bill of exceptions, prepared by the attorney for the defendant, was presented to the District Attorney, and he having failed to suggest any amendments thereto, but, on the contrary, having informed me that the same is a true bill, now, therefore, I, Oliver P. Evans, the Judge before whom the motion for a new trial was heard in said cause, do hereby settle, certify, and allow the foregoing as a correct bill of exceptions. Dated this 25th day of February, 1880. OLIVER P. EVANS, Judge of the Superior Court of the City and County of San Francisco." The appeal is from the judgment of conviction and from the order refusing a new trial.

It is claimed on behalf of the People, that the bill of exceptions cannot be considered here, on the ground that it was not settled by the Judge who tried the cause. The sections of the Code relating to the settlement of bills of exceptions in criminal cases are as follows :

" Section 1171.—Where a party desires to have the exceptions taken at the trial settled in a bill of exceptions, the draft of the bill must be prepared by him and presented, upon notice of at least two days to the District Attorney, to the Judge for settlement, within ten days after the trial of the cause, unless further time is granted by the Judge, or by a Justice of the Supreme Court, or within that period the draft must be delivered

to the Clerk of the Court for the Judge. When received by the Clerk he must deliver it to the Judge, or transmit it to him at the earliest period practicable. When settled, the bill must be signed by the Judge, and filed with the Clerk of the Court."

" Section 1172.—Exceptions may be taken by either party to a decision of the Court or Judge upon a matter of law:

" 1. In granting or refusing a motion in arrest of judgment.

" 2. In granting or refusing a motion for a new trial.

" 3. In making, or refusing to make, an order after judgment, affecting the substantial rights of the parties."

" Section 1173.—Exceptions may be taken by the defendant to a decision of the Court upon a matter of law.

" 1. In refusing to grant a motion for a change of the place of trial.

" 2. In refusing to postpone the trial on motion of the defendant."

" Section 1174.—Where a party desires to have the exceptions mentioned in the last two sections settled in a bill of exceptions, the draft of a bill must be prepared by him and presented upon notice of at least two days to the adverse party, to the Judge, for settlement, within ten days after the order or ruling complained of is made, unless further time is granted by the Judge or by a Justice of the Supreme Court, or, within that period the draft must be delivered to the Clerk of the Court for the Judge. When received by the Clerk, he must deliver it to the Judge or transmit it to him at the earliest period practicable. When settled, the bill must be signed by the Judge and filed with the Clerk of the Court. If the Judge in any case refuse to allow an exception in accordance with the facts, the party desiring the bill settled may apply by petition to the Supreme Court to prove the same ; the application may be made in the mode and manner, and under such regulations, as that Court may prescribe ; and the bill, when proven, must be certified by the Chief Justice as correct, and filed with the Clerk of the Court in which the action was tried, and when so filed it has the same force and effect as if settled by the Judge who tried the case. If the Judge who presided at the trial ceases to hold office before the bill is tendered or settled, he may, nevertheless, settle such bill, or the

party may, as provided in this section, apply to the Supreme Court to prove the same."

The only difficulty in determining the question arises from the concluding clause of the section relating to exceptions taken to an order refusing a new trial : " If the Judge who presided at the trial ceases to hold office before the bill is tendered or settled, he may, nevertheless, settle such bill, or the party may, as provided in this section, apply to the Supreme Court to prove the same." It does not seem to have occurred to the framers of this clause that the Judge who presided at the trial and the Judge who determined the motion for a new trial might, as here, be different individuals. The first portion of the section, however, provides that where a party desires to have the exceptions taken to an order refusing a new trial settled in a bill of exceptions, " the draft of a bill must be prepared by him and presented, upon notice of at least two days to the adverse party, to the Judge for settlement," etc. The " Judge " here spoken of is manifestly the Judge who should determine the motion for a new trial. It must be admitted that the section is somewhat ambiguous, but we think we ought not to give it such a construction as would deprive a party of the right to be heard upon a bill which has been settled and allowed as correct by the Judge who heard and ruled upon the motion, and who was therefore competent to certify to its correctness, and especially when one provision of the section clearly admits of such construction. The objection to the consideration of the bill will therefore be overruled.

At the trial, there was offered by the prosecution and admitted in evidence by the Court, against the objection and exception of the defendant, a paper purporting to be the dying declaration of the deceased, which paper is in these words :

" Dying statement of Mrs. Emma Downs. Believing I am very near death, and realizing that I may not recover, I wish to make this, my dying statement, as to the cause of my death ; and I now, in the presence of these witnesses, charge Mrs. Hodgdon, on Howard street, between Sixth and Seventh streets, with having been the sole cause of my death ; in that she did at three several times, and lastly, that on yesterday, the 14th day of March, 1878, did use an instrument or implement on my person for the purpose of and producing an abortion, and

that she and no other person is to blame in the matter.  This being my voluntary statement.          Mrs. Emma Downs.

" Witness : F. B. H. Wing, M. D.; John Wagner, M. D.

" San Francisco, March 15th, 1878."

There was error in admitting this paper in evidence as the dying declaration of the deceased.  It is essential to the admissibility of such declarations that it appear that they were made under a sense of impending death.  It is the *impression* of almost immediate dissolution that renders the testimony admissible.  " Therefore," says Mr. Greenleaf, in his work on Evidence, " where it appears that the deceased, at the time of the declaration, had any expectation or hope of recovery, however slight it may have been, and though death actually ensued in an hour afterward, the declaration is inadmissible.  On the other hand, a belief that he will not recover is not in itself sufficient, unless there be also the prospect of ' almost immediate dissolution.' " This is the rule recognized and approved by all of the authorities.  The only difficulty that arises comes from the application of the rule to the facts of the particular case.  In the case before us, however, we think it appears upon the face of the paper itself that the deceased had not abandoned all hope of recovery; and this cannot be made plainer than by a repetition of the words themselves :  " Believing that I am very near death, and realizing that I *may* not recover, I wish to make this my dying statement," etc.  There is here a clear indication that the deceased, at the time of making the declaration, had not abandoned all hope of recovery.  The declaration was therefore inadmissible. (1 Greenleaf on Ev., § 158; Wharton's American Law of Homicide, pages 306–7–8; *Rex* v. *Woodcock*, 2 Leach's Cr. Cases, 267, 566 ; *People* v. *Sanchez*, 24 Cal. 24.)

In the last case cited, this Court said : " This species of testimony should always be received with the greatest caution, and too much care cannot be observed by the Court in scrutinizing the primary facts upon which its admissibility is grounded. No person is entirely exempt from a disposition to excuse and justify his own conduct, or to inflict vengeance upon one at whose hands he has suffered a grievous wrong ; and in the eye of the law this proclivity is presumed, in cases like the present, to be overcome and silenced only by the presence of almost im-

mediate death. An undoubting belief existing in the mind of the declarant, at the time the declarations are made, that the finger of death is upon him, is indispensable to that sanction which the law exacts; and if it shall appear, in any mode, that there was a hope of recovery, however faint it may have been, still lingering in his breast, that sanction is not afforded, and his statement cannot be received."

On the trial, evidence was introduced, on behalf of the prosecution, tending to show that during the afternoon of the 14th of March, 1878, the deceased, accompanied by one Mrs. Wilkinson, visited the house of the defendant; that deceased went into the parlor of the defendant, and there told her that the operation had failed; that defendant expressed surprise, and then invited deceased to go up stairs with her; that defendant and deceased remained up stairs some 15 or 20 minutes, when they came down, and Mrs. Wilkinson and the deceased left the house; that deceased looked pale, and had a purple spot on one side of her face when she came down stairs; that she vomited twice while on her way home, and immediately after arriving there went to bed complaining of great pains in the head and in the region of the abdomen; that about 6 o'clock P. M., defendant was sent for and prescribed for the deceased; that deceased was delivered of a foetus at 12 o'clock on that night; that she continued to get worse, and at 5 o'clock the next morning the deceased sent her husband for the defendant, who again visited and prescribed for the deceased, and on leaving stated that she would return in the afternoon, when she expected to find deceased a great deal better; that when asked whether it would be better to send for another physician, defendant said she thought it unnecessary, and when she left she carried the foetus away with her; and that she never did return to visit the patient.

The defendant, in testifying in her own behalf, after denying that she performed the operation with which she was charged, and admitting that, at the request of the deceased, she had made certain examinations upon her person and prescribed for her, said: "When I left at my last visit I told them that I would come back in a short time, and when I went home I told my son that I would like to have him go with me. I told him what I suspected on seeing the foetus, and asked him if he would go

with me in an hour or two, or as soon as he could." In answer to a question by her counsel as to whether or not she went, the defendant replied: " Before I got ready to go, Mr. Downs came and told me ———" At this point the District Attorney interposed an objection, and the Court ruled that the witness might state that Mr. Downs told her *something* by reason of which she did not go, but refused to permit her to state what it was that Downs told her. To this ruling the defendant reserved an exception, which we think well taken. The prosecution had shown that the deceased was ill, and that the defendant had been attending her as her physician, and that on leaving, on the occasion of her last visit, defendant had said she would return very soon, but did not return at all. This circumstance, unexplained, might have been considered by the jury as a suspicious circumstance, tending to show guilt on defendant's part; and the latter, in order, if she could, to do away with any inference or suspicion to her injury that might have been drawn from her failure to return to her patient under the circumstances appearing, had the right to show *why* she did not return. This she could not fairly do by saying it was because of *something* deceased's husband told her, without showing what that something was.

For the errors committed in the particulars alluded to, the judgment and order must be reversed. It becomes therefore unnecessary to pass upon the other questions presented by the counsel for the defendant.

Judgment and order reversed, and cause remanded for a new trial.

THORNTON, J., McKINSTRY, J., SHARPSTEIN, J., MYRICK, J., and McKEE, J., concurred.

[MORRISON, C. J., took no part in the decision of this cause.]