# TERRITORY OF MONTANA, RESPONDENT, v. BRYSON, APPELLANT.

CRIMINAL LAW — *Competency of juror.* — Where the examination of a juror for cause establishes the facts, that he knew nothing of the case, except having read newspaper accounts at the time; that he had formed and may have expressed an opinion; that he had no bias or prejudice in the case; that he could discard that opinion; that he could decide the case fairly and impartially upon the law and the evidence adduced upon the trial, he is competent under the provisions of subdivision 11, section 287, division 3, Compiled Statutes of Montana.

CONSTITUTIONAL LAW — *Compiled Statutes of Montana, section 287, subdivision 11, declared constitutional.* — Compiled Statutes of Montana, division 3, section 287, subdivision 11, providing that a juror, who has formed or expressed an opinion as to the guilt or innocence of the accused, is competent, if it appear that such opinion is founded upon reading newspaper statements, and the juror feels able, notwithstanding such opinion, to render an impartial verdict, is not repugnant to the Constitution of the United States, conferring the right of trial by an impartial jury.

CRIMINAL PRACTICE — *Examination of juror.* — An objection to the ruling of the trial judge, excluding a question asked upon the examination of a juror for cause, cannot be heard in this court for the first time.

SAME — *Motion for a new trial.* — Under section 1 of the Act of September 14, 1887, relating to motions for new trial, a statement on motion for a new trial may be settled and passed upon by the successor of the judge who tried the case.

SAME—*Contents of statement.*—It is not error for the court to refuse to incorporate into the statement of the case a portion of the argument of the prosecuting attorney, advancing a theory, in order to show that some newly-discovered evidence would overthrow such theory.

EVIDENCE— *Grounds of objection.* — An objection to the admission of certain letters in evidence, on the trial, is insufficient if no grounds of objection are stated.

NEWLY-DISCOVERED EVIDENCE. — Newly-discovered evidence reviewed, and held immaterial and insufficient for the purpose of a new trial. The evidence reviewed and held sufficient to sustain a conviction of murder in the first degree.

*Appeal from First Judicial District, Lewis and Clarke County.*

The defendant was tried before McCONNELL, C. J. A motion for a new trial was refused by BLAKE, C. J.

*S. A. Balliet,* for Appellant.

The court erred in refusing to permit counsel for the defendant to inquire of the juror, Hopps, and other jurors, as to the extent of the opinion he and they had formed, and the amount of evidence it would require to override such an opinion. (*Stephens* v. *People,* 38 Mich. 741.)

The judge was equally in the wrong in overruling the challenge on the showing as it stood; he should further have found whether or not the juror was indifferent. The Constitution of the United State provides that in criminal prosecutions the accused shall have a right to a speedy and public trial by an impartial jury. (Art. 6, § 28.) Of course, no legislation can take this away. (38 Mich. 741, 742, *supra.*) In a criminal case, when, after a full examination, the evidence given, upon a challenge, leaves a reasonable doubt of the impartiality of the juror, the defendant should be given the benefit of the doubt. (*Holt* v. *People,* 13 Mich. 227; *Moses* v. *State,* 10 Humph. 458; *Henry* v. *State,* 4 Humph. 270.) In the case at bar the jurors answered that they had an opinion; their answer was not that they had an impression of the light character referred to in *Holt* v. *People.* It is unnecessary to elaborate upon the distinction between a mere impression and a frame of mind ripened into an opinion. The same authority holds that the burden is upon the defendant to show that the opinion of the juror was of that fixed and definite character, which would leave such a bias upon his mind as to preclude his giving due weight to the presumption of innocence with which the law surrounds the accused.

The burden resting on the defendant, the court erred in refusing to permit defendant's counsel to further inquire into the fixed and deliberate character of the juror's opinion. The competency of the juror should not be questionable. It should appear ·that he stands indifferent, and above all legal exceptions. (*Moses* v. *State,* 10 Humph. 460.) It is manifest that it was the intention of the trial judge to form the jury under section 287, division 3, Compiled Statutes; but is insisted on behalf of the defense that the act is in violation of article 6, Amendments to the Constitution of the United States, which secures to the accused in all criminal prosecutions a "speedy, public trial by an impartial jury." (*Carson* v. *State,* 6 Baxt. 466; *Rice* v. *State,* 1 Yerg. 432; *McGowan* v. *State,* 9 Yerg. 192; *Payne* v. *State,* 3 Humph. 375; *Brakefield* v. *State,* 1 Sneed, 215; *Norfleet* v. *State,* 4 Sneed, 340; *Kling* v. *Fries,* 33 Mich. 277; *Territory* v. *Kennedy,* 3 Mont. 520.) This leads us to inquire what the word "impartial" means, as it is defined when used in constitutional enactments. A man who is impartial is one who is not biased in favor of one party more than another; who is indifferent, unprejudiced, disinterested as an impartial judge or arbitrator; free from any bias, or indifference, or disinterestedness. (Cooley's Constitutional Limitations, 60; *Carson* v. *State,* 6 Baxt. 469.)

The following authorities hold that the fact that a juryman had disclosed his opinion on either side was a principal cause of challenge, on the grounds that he was not impartial: 6 Baxt. 470; 1 Tidd, 853; Coke on Littleton, 156; 3 Burr. 1856; 5 Bac. 353. In all criminal prosecutions, the constitution guarantees to the accused a trial by an impartial jury; that is, a jury who will give him the benefit of all his rights, including that of the presumption of his entire innocence of crime until proven guilty. (*Olive* v. *State,* 11 Neb. 23; *Curry* v. *State,* 4 Neb. 545; *Carroll* v. *State,* 5 Neb. 31; *Conway* v. *Clinton,* 1 Utah, 219; *Stout* v. *Hyatt,* 13 Kan. 232; *Atchison etc. R. R. Co.* v. *Franklin,* 23 Kan. 74.) The court said, while passing upon the competency of the juror, Hopps, that if it was not for the statute he would consider him an incompetent juror. If he was incompetent without this statute, it necessarily follows that he was incompetent because he was not an impartial juror; and, if he was not an impartial juror, he was constitutionally disqualified;

and, if he was constitutionally disqualified, no amount of State legislation can make him a competent juror. It is more reasonable to suppose that the statute on this subject was intended to be in affirmance of the common-law rule, than that it was meant to take from the accused the most important security of a fair trial. (*Stephens* v. *People*, 38 Mich. 743.)

The evidence is insufficient to sustain the verdict. (*Ohms* v. *State*, 49 Wis. 415.) The defendant has a right to have a hearing on a motion for a new trial before the judge who presided at the time of the trial. (*Ohms* v. *State*, 49 Wis. 415; *United States* v. *Harding*, 1 Wall. Jr. 137; *Warrain* v. *Smith*, 2 Bulst. 136.)

*John B. Clayberg,* Attorney-General, for the Territory, Respondent.

Brief of William Wallace, Jr., of special counsel for the Territory. Counsel for the defendant is not in a position to avail himself of the alleged error of the court in refusing to permit him to put the question (to the juror, Hopps) " whether it would require evidence to override his opinion," for the reason that he took no exception to the action of the court upon this point. The rule that an objection cannot be taken for the first time in this court, or upon motion for a new trial, is well settled. (*Drake* v. *Foster,* 52 Cal. 225; *Frink* v. *Alsip,* 49 Cal. 103; *Keeran* v. *Griffith,* 34 Cal. 581; *Tebbs* v. *Weatherwax,* 23 Cal. 59.) Defendant assigns no reason of any character in support of his exception. The authorities are uniform that the record must show distinctly the grounds and causes for the challenge. (Thompson and Merriam on Juries, § 253; *Ripley* v. *Coolidge,* Minor, 11; *Rash* v. *State,* 61 Ala. 89; *State* v. *Bullock,* 63 N. C. 570; *People* v. *Bodine,* 1 Denio, 281; *Fillion* v. *State,* 5 Neb. 351.) The judge in a criminal trial must, of necessity, have a large measure of discretion in passing upon the qualifications of jurors, and his ruling will not be set aside unless there is manifest error. (*State* v. *Walsh,* 34 La. An. 991; Thompson and Merriam on Juries, § 252.) Even in those States where no statute exists upon the subject, the rule is recognized that before fixed convictions will disqualify they must amount to settled convictions. (*People* v. *Bodine, supra; People* v. *King,* 27 Cal. 512; *People* v. *Reynolds,* 16 Cal. 130; *People* v. *McCauley,* 1 Cal. 379.)

The defendant cannot, for the first time in this court, be heard to urge the unconstitutionality of section 287, division 3, Compiled Statutes. The statute is not open to any such objection, and its constitutionality is upheld and settled beyond cavil by the following line of authorities: *Cooper* v. *State*, 13 Ohio St. 328; *Stokes* v. *People*, 53 N. Y. 164; *Thomas* v. *People*, 67 N. Y. 218; *Balbo* v. *People*, 80 N. Y. 484; *Thomas* v. *State*, 36 Tex. 315; Thompson and Merriam on Juries, §§ 222, 223, 224.

The contention of appellant, that he had a right to have his hearing on the motion for a new trial before the judge who presided at the time of the trial, is likewise without merit, for the reason that it was by defendant's consent, and through his own action, that the matter came on for hearing before.Judge BLAKE, the successor of the judge who tried the case. Under our statute, Judge BLAKE was the proper person to hear and determine this motion. Under a statute similar to our own, California has repeatedly held that the defendant has no right to have the motion passed on by the same judge who tried the case. (*People* v. *Hobson*, 17 Cal. 424, 430; *People* v. *Henderson*, 28 Cal. 466, 475; *People* v. *Hodgson*, 55 Cal. 72, 75.)

LIDDELL, J.—The defendant was indicted, tried, and convicted of murder in the first degree, and sentenced to be hung. From an order overruling a motion for a new trial, as well as from the judgment, he prosecutes the present appeal.

No objections appear in the record to the judgment, which we may say, after a careful examination, is completely responsive to the indictment, and we dismiss the subject with this statement.

We now address ourselves to the errors complained of in the motion for a new trial, and for convenience will consider them in the order in which they appear in the motion, reserving, however, for the last, the question as to whether or not the verdict is contrary to the law and the evidence.

During the progress of the trial, a juror by the name of Hopps, being interrogated on his *voir dire*, testified as follows: "I have heard something about this cause by reading an account of it in the newspapers, and presume I expressed an opinion at the time. I have no feeling of bias or prejudice in this case, and can give the defendant a fair and impartial trial upon the

evidence adduced here upon the witness stand." *Question by counsel for defendant.* "You say you have an opinion at the present time in regard to the guilt or innocence of the accused?" *Answer.* "Yes, sir." *Question.* "Is that opinion formed from reading newspapers?" *Answer.* "Yes, sir." *Question.* "And you state you can discard that and try this case according to the evidence?" *Answer.* "I could." *Question.* "Would it require any amount of evidence to override the opinion that you have already formed?" At this point the trial judge interrupted the examination, and overruled the question of his own motion, stating that it necessarily would require some evidence to remove the opinion; and thereupon counsel for defendant discontinued the examination of the juror; nor does the record disclose any further examination by either the court or prosecuting attorney. No objection was made to this ruling of the court; but the same question being afterwards propounded to three other jurors, the court made the same ruling, and after giving reasons at some length for the ruling, said that counsel might have the benefit of the exception. But from a careful inspection of the record, it nowhere appears that there was any objection to the action of the court, or an exception actually reserved; while it does appear that immediately upon the ruling the counsel for defendant challenged the juror for cause, and when that was overruled, he reserved an exception in due form. Under the circumstances we do not consider that there was any objection made to the ruling of the court in excluding the question, and, as a consequence, it cannot be heard here for the first time. (See Gear's California Digest, p. 58, and the authorities there cited, under the title of "Errors not excepted to.") But, even if it were otherwise, the action of the court was not prejudicial to the rights of the accused, for, in making his ruling, the judge expressly said that it would be presumed that some evidence was necessary to a change of opinion in the mind of the juror; but inasmuch as the statute had provided that a juror who had so formed his opinion was competent if, notwithstanding what he had read, he could decide the case fairly and impartially upon the law and the evidence, it was a needless question, and we agree with him; for no matter from what source the juror formed his opinion, unless it be from conversation with wit-

nesses, or reading reports of the testimony, it must be fixed and unqualified in order to disqualify him, which was evidently not the case with the juror in hand. (*People* v. *King,* 27 Cal. 512; *People* v. *Bodline,* 1 Denio, 308; *People* v. *Reynolds,* 16 Cal. 130; *People* v. *McCauley,* 1 Cal. 379.)

We next come to the examination of the challenge of the juror for cause; that is, his disqualification on account of his having formed and expressed an opinion based upon newspaper accounts of the circumstances. In considering the disqualification of a juror under such circumstances, we necessarily touched somewhat upon the matter in considering the last point; but it was only incidentally before us. Paragraph 11, section 287, of the Criminal Practice Act provides, that having formed or expressed an opinion shall disqualify the juror, unless it appears that the juror has formed his opinion from reading newspaper statements, comments, or reports, and can state on oath that he feels able, notwithstanding such opinion, to decide the case fairly and impartially upon the law and the evidence. The examination of the juror established the following facts: (1) That he knew nothing of the case, except having read newspaper accounts at the time; (2) that he had formed, and may have expressed, an opinion; (3) that he had no bias or prejudice in the case; (4) that he could discard that opinion; (5) that he could decide the case fairly and impartially upon the law and the evidence adduced upon the trial.

This was the condition of the juror when the counsel for defendant by his challenge for cause presented the question for the ruling of the court; and it left the record showing affirmatively the qualifications of the juror, thus bringing the point directly in line with the case of *People* v. *Cochran,* reported on page 548, 61 California Reports.

Counsel for defendant did not seek to inquire whether the juror had formed his opinion from reading newspaper reports of the testimony of witnesses, which would have disqualified him; nor did he request the court to make any such examination; nor did he complain of such omission, or reserve any exceptions, except to the overruling the challenge for cause. We do not understand that by paragraph 11, section 287, of the Criminal Practice Act it is made the duty of the judge to examine

the juror, unless he is requested so to do, or in his discretion thinks proper to make such investigation. He is not charged either with the prosecution or defense of criminals, and when counsel for prosecution and defense have made such examination as is desired, they may then invoke a ruling by the court. It is their province to elicit from the juror on his *voir dire* such facts as they may deem necessary for the court to hear in passing upon the challenge for cause. The counsel for defendant might have inquired himself of the juror whether he had formed his opinion from reading reports of .the testimony of witnesses, and not having done so, or requested the court so to do, he cannot be heard to urge that objection for the first time in this court. Manifestly, had he so requested, the objection could have been obviated in the lower court.

The record shows affirmatively that there was no error in the ruling of the trial judge, for the juror stated that his opinion was formed from reading newspaper accounts, thus negativing the idea that he had read reports of the testimony of witnesses. In fact, we are satisfied that this was the view taken of the matter by counsel, as well as the trial judge.

In a very exhaustive brief, counsel for defendant urges upon our consideration the unconstitutionality of paragraph 11, in section 287 of the Criminal Practice Act, inasmuch as the statute provides, under certain conditions, that a juror is qualified, notwithstanding the fact that he has already formed and expressed an opinion as to the guilt or innocence of the defendant; and that, having formed such an opinion, he is not impartial; and the law is therefore in conflict with the sixth amendment to the Constitution of the United States, which confers the right of trial by an impartial jury.

The question is not new, but has been frequently passed upon in the various States until now it is no longer open. Even in those States where no statute exists upon the subject, the rule as to the qualification of the juror under such conditions is the same. So far as this court is concerned, the matter must be considered as definitely settled by the decisions of the Supreme Court of the United States in the case of *Spies* v. *Illinois,* reported in 123 U. S. 131. The Illinois statute provided "that, in the trial of any criminal cause, the fact that a person called

as a juror has formed an opinion or impression, based upon rumor or newspaper statements, about the truth of which he has expressed no opinion, shall not disqualify him to serve as a juror in such case, if he shall, upon oath, state that he believes that he can fairly and impartially render a verdict therein, in accordance with the law and the evidence, and the court shall be satisfied of the truth of such statement." By comparing this statute with the paragraph in the Montana law, it will be found that no material difference exists between the two. The trial judge, in passing on the Illinois statute, said: " It is not a test question whether the juror will have the opinion which he has formed from newspapers changed by the evidence, but whether his verdict will be based upon the account which may here be given by the witnesses under oath." And this the juror, in the present instance, testified he could do. We refer to that case, and to the numerous authorities there cited from the various States where a statute similar to that under consideration has been either accepted as constitutional or decided to be such, and we dismiss the subject with the following extract from that opinion: " Without pursuing the subject further, it is sufficient to say that we agree entirely with the Supreme Court of Illinois in its opinion in this case, that the statute on its face as construed by the trial court is not repugnant to section 9, article 2, of the Constitution of that State, which guarantees to the accused party in every criminal prosecution 'a speedy trial by an impartial jury of the county or district in which the offense is alleged to have been committed.' As this is substantially the provision of the Constitution of the United States on which the petitioners now rely, it follows even if their position as to the operation and effect of that Constitution is correct, the statute is not open to the objection which is made against it." The trial judge was in error when he regarded it as imperative to accept the juror after he had stated that, notwithstanding the opinion he had formed, he could try the case fairly and impartially, and render a verdict according to the law and evidence; for the statute still left it to the discretion of the court to be satisfied that the juror was impartial, and that he could render such a verdict. This, however, was a harmless error, and did not operate prejudicially to the defendant, for the examination on the *voir dire* showed

the juror to be impartial, and to have no bias.  He was quali-
fied under the law, and the court committed no error in over-
ruling the challenge for cause.

The objection that there is no proof of the venue is equally
untenable, and cannot be seriously contended for under the cir-
cumstances.  Incontestable evidence establishes the fact that the
deceased was last seen in company with the defendant in the city
of Helena, on the 21st of August, 1888, and that her body, with
marks of violence upon it, was discovered some time in the
month following hid away at the bottom of an old prospect hole
near the city aforesaid, in the county of Lewis and Clarke.

The next error complained of is rather illogical, and equally
without merit.  It is contended by the counsel for the accused
that the statement on motion for a new trial should have been
settled and passed upon by the judge who tried the case, instead
of his successor, the present chief justice.  This objection is not
apparent upon the record by any objection to the authority of
Judge BLAKE to hear the motion; and when we consider that
the defendant is the moving party, and that through counsel he
has caused a statement on motion for a new trial to be prepared,
settled, and decided by the judge of the district in which the
case came up, it is rather singular that he should want the court
to reject the statement on the motion for a new trial for a fault,
if any, which is attributable to the appellant.  If counsel for
defendant were correct in this position, we could consider noth-
ing contained in the statement on motion for a new trial, and
the appeal would then stand upon the question of whether the
indictment charged an offense under the laws of the Territory,
and, if so, whether the verdict is responsive to the indictment.
But we are satisfied that the statement on the motion is properly
before us; for although the case was tried before Judge Mc-
CONNELL, nevertheless, when he retired from the bench, Judge
BLAKE, who was his successor in that district, had the authority
to act in the matter.  Section 294 of the Civil Practice Act,
permits bills of exception on motion to be signed by the judge
who heard the cause, although his term of office has expired;
but section 349 of the Criminal Practice Act merely provides that
exceptions "must be settled and signed by the judge, and filed
with the clerk of the court."  We derive our sections of both

civil and criminal procedure upon this subject from California, and the Supreme Court of that State has on three occasions interpreted the law adversely to the pretensions of the appellant. (See *People* v. *Hobson*, 17 Cal. 424; *People* v. *Henderson*, 28 Cal. 466; *People* v. *Hodgson*, 55 Cal. 72.) An uncertainty of the practice, however, in this respect, has been finally set at rest by the Act of September 14, 1887, relating to motions for new trials in this Territory. By section 1 of the act referred to it is provided that motions for new trials may be heard and determined by the judge of the District Court wherein the same is pending, either at chambers or in open court.

We have carefully considered the evidence, upon which it is claimed that a new trial should be granted, but fail to discover anything material in it, or which would be likely to produce a different result were the motion allowed. The newly-discovered evidence throws no light upon the guilt or innocence of the accused. Briefly stated, the affidavits of the four witnesses show the following facts: Frank Martin's affidavit is to the effect that he and his wife were at the prospect hole the day before the discovery of the body, and that the foot-print of a woman, as testified to by one of the witnesses for the prosecution, may have been that of his wife; while the most that can be said of the testimony of Wright and Bailey is that, two days after the arrest of the defendant, they were at the prospect hole in which the body of the deceased was found, and on that occasion saw a dark, heavy-set man, who wore a mustache, coming away from the hole, and that he seemed to avoid them, walking rapidly in the direction of town. On another day they were at the prospect hole, and there met a man, woman, and child, and that in fine weather, at that time of the year, persons may be seen any day strolling in the hills where this prospect hole is situated. Mrs. McConnell's testimony is even of less importance than the foregoing, for she never saw the deceased, but from her published picture and descriptions she believes that on the Sunday previous to the disappearance of deceased she saw her walking in the direction of the hills where the prospect hole is situated, and at the time she was accompanied by a dark, heavy-set man, who wore a mustache. When we consider that the deceased was last seen on the Wednesday evening following, this testimony becomes

utterly irrelevant; and, indeed, a score of persons might have testified to the same effect without throwing any light on the question of the guilt or innocence of the accused, who, if he committed the murder, did so after the time at which the deceased was seen out walking. In so far as the evidence shows that the deceased had as an admirer a dark-complexioned, heavy-set man, who wore a mustache, and sometimes accompanied her in her walks, it is merely cumulative, and is therefore insufficient for the purpose of procuring a new trial. This brings us to the consideration of a bill reserved to the refusal of the judge to incorporate in the statement a part of the argument of the prosecuting attorney while addressing the jury. In this argument he advanced a theory, based upon the evidence, as to the manner in which the crime had been committed; and it was against this theory that most of the newly-discovered evidence was leveled. We know of no law for such a practice, nor does it follow that the deductions from the facts by the prosecutor were either correct or that they were the inferences upon which the jury based their verdict.

The complaint concerning the admission in evidence of certain letters cannot be sustained, for the reason that, in making his objection, counsel for defendant failed to state any grounds or reasons therefor. Such an objection has been held to be insufficient. (*Tucker* v. *Jones*, 8 Mont. 225; *Herman* v. *Jeffries*, 4 Mont. 522.) It is true that the evidence in the case is altogether circumstantial; in other words, it is a collection of independent facts from which the jury is asked to infer or presume the guilt of the accused. This kind of evidence is never so satisfactory as that of positive or direct testimony, for the danger lies in making an erroneous deduction from the facts proved. The instructions of the court as to the nature and character of circumstantial evidence, the method of considering it, together with its weight and sufficiency, were doubtless satisfactory to the accused, since we find no objection thereto in the record. And, under the circumstances, we think that the verdict of the jury so guided in their deliberations is in all respects entitled to as much weight and consideration as if based upon direct and positive evidence. From the evidence we find that the deceased was the mistress of the accused; that she was some years older than he was; that while living together in St. Paul in this illicit way

they had quarreled, and she had caused him to be arrested and confined in jail. For this he was very much incensed with the deceased, and, although a reconcilation was effected and he came to Helena with her, his letters previous to that time and his conduct while here indicated that he still bore malice to the dead woman and was anxious to be rid of the *liaison.* They lived together as man and wife while in Helena, she prepaying the rent for a month on the room occupied by them at the time of the disappearance. On the day she was last seen a lady lodging at the same place changed a ten-dollar piece for the deceased, who requested her to keep five dollars until her return, and she afterwards left the house for a walk, in company with the accused. She was dressed in a light, summer costume, and had left her clothes and personal effects unpacked and hanging or scattered about the room.

Nothing was ever seen of the deceased after this, which was on Wednesday afternoon of the 22d of August, 1888; until about the last of September following, when her body was discovered concealed under a pile of rocks at the bottom of an old prospect hole in the vicinity of Helena. When discovered it was evident that the deceased had met her death by violence, and that she had been killed and hidden for over a month in the prospect hole. Upon the body was the same costume worn the evening of the departure from the boarding-house with her pretended husband, and around her neck was a chain which the dead woman usually wore with her watch. The fastening by which the watch and chain were connected had been wrenched or violently jerked away, and the watch itself was missing. Unmistakable marks of violence upon her person showed that she had been murdered. The accused returned to the lodging-house without his wife on the same evening of his departure, and a light was observed in his room as late as ten o'clock that night. On the next morning the accused was awake and moving about the room at least three or four hours earlier than ever before. He packed his wife's clothing and effects in two trunks, disposed of one or two articles by gift, and, in reply to a question, stated that he was going to Butte, and that his wife had already preceded him. He left the boarding-house that morning, but instead of going to Butte, took lodging at another place in Helena, and

registered under the name of Lundstrom. That day and the next he spent in pawning some of the wearing apparel of his wife and her watch. He then shipped the two trunks to Butte by express, refusing, however, to prepay the charges, but saying that they would be called for by Annie Lundstrom, who was "one of the girls." After this, he again changed his boarding-house, and registered under the name of Bud Burnes, from Seattle. He was identified as the person who had pawned the watch, which was also proven to have belonged to the deceased, and having been worn by her on the evening when she was last seen in company with the accused. The loop or ring in the handle of the watch, by which it was attached to the chain, had been drawn out of shape in an elongated form, as if the result of a violent jerk or pull. In the mean time, public senti-ment being aroused over the disappearance of the woman, the accused was arrested and carried before the magistrate. He declined to give any explanation in regard to the trunks, but stated that the deceased had gone to Butte and that he had seen her there. In his testimony, on the trial of the case, he admitted that this statement was untrue, and that he had not been to Butte, but that he believed that the deceased had gone there, and he was so informed by one Spencer, who does not appear to have been sworn as a witness in behalf of the accused. It further appears that, prior to his arrest, he had taken the precaution to procure his mail from the postoffice through one Mrs. Thompson, whom he at one time introduced as his wife, Mrs. Burnes. These facts, with many other minute circumstances too numerous to mention, bind the chain of guilt so strongly about the defendant that his own testimony becomes utterly futile and unworthy of belief. He wholly fails to explain or account for his possession of the dead woman's watch on the day after her disappearance; and unless we close our eyes to all evidence in this case, except the testimony of the defendant in his own behalf, the conclusion is overpowering that he is the individual who perpetrated the murder. The facts are inconsistent with his innocence, nor are they susceptible of any explanation other than that based upon the hypothesis of his guilt.

In conclusion, we are satisfied that the defendant has had a fair and impartial trial, and should suffer the penalty of the law

for the great crime he has committed. It is therefore ordered, adjudged, and decreed that the judgment of the lower court be affirmed and carried into execution, according to the terms thereof.

BACH, J., and DE WOLFE, J., concur.